WESLEY HILTS, ADM'R v. CHICAGO & GRAND TRUNK RY.

*Personal injury to fellow servant—Negligence in hiring.*

1. A master is liable for injuries to servants that spring from such negligent acts of fellow servants as are due to their incompetency, if the master himself has been negligent in selecting competent servants, or has kept incompetent ones after hearing of their unfitness, or when he might have heard of it by using ordinary care in making inquiry.

2. If a locomotive engineer has for several months habitually used intoxicating liquors to such an extent that those who come in contact with him notice his condition, the failure of his superiors to notice it and their omission to make such inquiries as would disclose it, is negligence.

3. A railroad company cannot be held liable as for the consequences of negligently retaining incompetent servants, if in exercising due care and diligence to see that its employees are competent, careful and sober, it fails to discover that they are not. But the degree of diligence which they must exercise must correspond to the servant's responsibility, and it is for a jury to say what reasonable diligence may be. The presumption is that the company has done its duty, and the burden of proving the contrary is on the party complaining of its negligence.

Error to Shiawassee. (V. H. Smith, J.) Oct. 17.—Jan. 7.

CASE. Defendant brings error. Affirmed.

*E. W. Meddaugh* for appellant.

*McBride & Miner* for appellee.

CHAMPLIN, J.   George Jones was run over by defendant's engine and killed, while in the employment of defendant, April 15, 1882.   He was an ordinary laborer, engaged under a section boss at repairing the track, changing iron, shoveling dirt and gravel, raising low joints, etc.   It was the duty of the section men to unload gravel trains, or do anything that the road-master told them to do.   If an employee lost his tools, or they were carried off through his negligence, they were charged up to him and he was obliged to pay for them. On the day the deceased was killed, he, with a number of other section men, were taken in the caboose of the gravel train from Hamilton station to a distance of about two miles, to unload the gravel train.   The gravel was unloaded by means of a plow operated by a cable connected with the engine.   After it was removed by the plow the men were required to clear the gravel from the track between the cars. It appears that before this was fairly accomplished the train started, and there was considerable haste for the men to get upon the cars.   Jones threw his shovel upon one of the flat cars and climbed upon the engine.   The train was backing west.   When it arrived at the switch the train-men cut off all the cars but the car with the gravel plow, from the engine, and they were "kicked" down the main track.   They then put the car with the gravel plow in upon the spur switch, and the engine and tender then passed upon a long switch, in order to pass to the west of the flat cars.   In the meantime the deceased had left the engine and ran down the main track, with the intention of recovering his shovel.   He followed down between the switch and the main track a short distance, until he came to a "washout," when he passed upon the switch track, still running and calling to some men near the cars to get his shovel.   He had proceeded but a short distance when the engine, backing at the speed of ten or twelve miles an hour, without warning ran him down and over him, killing him instantly.

The declaration contained different counts charging the death of Jones to the negligent act of the company; but the negligence upon which the case was submitted by the court to the jury was that complained of in the declaration, wherein it stated that the engineer in charge of the engine was at the time intoxicated, by reason of which, and through his carelessness and negligence in the running of the engine, Jones was killed, and that the habits of the engineer for intoxication were so notorious that defendant was guilty of such negligence in not ascertaining such fact as to charge it with the negligence of the engineer. The inquiry before the jury, therefore, as submitted by the learned judge, was confined to these three questions of fact:

*First.* Did the deceased himself, by any negligence of his own, contribute to the injury complained of?

*Second.* Was the injury to Jones caused by the negligent act of the engineer, which was due to his intoxicated condition?

*Third.* Was the habit of intoxication of the engineer sufficiently notorious so that the company can be fairly held by implication to have known it, or be guilty of negligence in not knowing it?

The question of contributory negligence was submitted to the jury under proper instructions; and the second and third subjects of inquiry were submitted under the following instructions:

"Now, I have told you that the injury must be caused by the negligent act of the parties controlling the engine. That is necessary. That must be shown by a preponderance of evidence on the part of the plaintiff in order to entitle him to a verdict. In this case the question whether or no the defendant is liable, it seems to me, turns upon this question, and that I submit to you to say as jurors whether it be true or not; whether or no the faults or vices, or whatever you call them, or the habits of this man, if they existed—whether or no they were sufficiently notorious so that the company can be fairly held by implication to have known it, or guilty of negligence in not knowing it.

Now, a railroad company, in law, is required to exercise ordinary care in knowing as to the habits of the individuals

to whom they intrust their business, and with whom the public deal, and they cannot sit quietly down and make no inquiry when the facts become so notorious that, by the exercise of ordinary care, as ordinarily prudent, careful men, they should know it; and if the company continues in its employment an incompetent servant after his incompetency is known to its officers—of that there is no evidence—or is so manifest that its officers, by the use of due care, would have known it, such a continuance in its employment is as much a breach of duty and ground of liability as the original employment of an incompetent person.

Now, then, had his habits become so notorious—was he so negligent of his duty—that you can say, as fair, candid men, that the company was negligent in not knowing of his habits ? If the evidence is equally balanced upon that point, then the verdict must be for the defendant. It devolves upon the plaintiff to establish that proposition by a preponderance of evidence.   If the jury find that the driver of the engine that ran over Jones was incompetent, then it was the duty of the defendant to discharge him as soon as they knew it, and if, by the use of due diligence to inform themselves of the competency of their employees, they ought to be informed of his incompetency, then they are chargeable with the consequences of his negligent acts.   They were bound to exercise reasonable care in knowing as to the competency of their engineers.   If the jury believe, from the evidence, that deceased came to his death through the engineer's negligence, caused by his intoxication, this will not justify them in finding for the plaintiff, unless they further find from the evidence that his habit in the use of intoxicating liquors was such, and of so long standing, that they ought to have known it.   The evidence in the case will not justify the jury in finding that when deceased was killed he was engaged in work not within the terms of his contract, and therefore the jury cannot find a verdict for the plaintiff on this ground. There is no evidence in the case that will justify the jury in finding that the engineer used intoxicating liquors to excess when he entered the service of defendant, or that he was not then a competent and safe man to have charge of running an engine.   There is no evidence in the cause that will justify the jury in finding that any superior officer of the engineer, in defendant's service, knew, or ever heard, prior to the accident, that the engineer drank intoxicating liquors.   The defendant owed no duty to the deceased to sound the bell or whistle at or east of the highway crossing, or to sound the

whistle in the station-yard, unless he appeared to those in charge of the engine to be in danger of being injured by it.

Deceased was a fellow-servant of the engineer, and therefore, if the jury believe from the evidence that the negligence of the engineer caused his death, this alone will not justify them in rendering their verdict for the plaintiff.

Now, gentlemen, that doctrine may not seem just, that where the death of a party is caused by the negligent act of a fellow-laborer or fellow-servant that the company is not bound to respond, but such is the law, that, if it results from the negligent act of a fellow-servant, the company is not bound to respond because of his negligent act. There must be something further in order to make them liable. The officers of the company who employ the men must be negligent either in employing him, or in retaining him after knowing his vices, or by their negligence in failing to learn as to his condition. Upon the last ground is the theory and the only theory upon which this case is submitted to you."

At the request of counsel for defendant the court submitted to the jury the following special questions:

1. Was the engineer of the engine intoxicated at the time of the accident?

2. Had the engineer been in the habit before the accident of drinking intoxicating liquors to excess?

3. Had the engineer, before the accident, ever been intoxicated or under the influence of liquor when running his engine, and if so, how many times as shown by the evidence, and when?"

The jury returned, with their general verdict for the plaintiff, answers to the foregoing questions as follows: To the first question they answer, "Yes." To the second question they answer, "Yes." To the third question they answer as follows: "Yes, three times; when loading train near Bancroft; when at Mrs. Dunham's, at Durand; when at hotel at Durand."

The only exception taken to the charge of the court as given was to the following portion, namely: "But there is another ground which I submit to you, as jurors, to say whether or not the defendant is liable, and that is whether or not the engineer had been guilty of such acts, showing his

intemperance, that the company was negligent in not knowing his bad habits." The errors assigned are as follows :

1. There is no evidence in the case that will justify the jury in finding that the engineer, at the time of the accident in question, was in any degree intoxicated.

2. There is no evidence in the case that will justify the jury in finding that the engineer, at any time prior to the accident, used intoxicating liquors to excess, or was intoxicated in any degree when in the discharge of his duties as engineer.

3. Under the pleadings and proofs in this cause, the defendant is entitled to the verdict of the jury ; and

4. In instructing the jury as follows, to-wit : "There is another ground which I submit to you, as jurors, to say whether or not defendant is liable, and that is whether or no the engineer had been guilty of such acts, showing his intemperance, that the company was negligent in not knowing his bad habits."

The fourth assignment contains no error. The instruction was based upon the well-settled principle of law that it is a duty which masters owe to servants employed by them, that the master will exercise due care in the employment of servants to select those who are competent; and that failure to do so is negligence in the master, which will render him liable for injury caused by the negligent act of the servant, if occasioned by such incompetency. And this principle extends to the act of the master in retaining an incompetent servant in his employment after knowledge comes to him of the unfitness of the servant for the service in which he is engaged, or of whose unfitness he might have known by the exercise of due diligence or ordinary care.

The other three assignments of error may be treated together, as they are based upon the want of any evidence to support the verdict. The point to which the proofs were directed were brought into a very narrow compass. The court charged the jury that there was no evidence in the case that would justify them in finding that the engineer used intoxicating liquors to excess when he entered the ser-

vice of defendant, or that he was not then a competent and safe man to have charge of running an engine; and that there was no evidence that any superior officer of the engineer, in defendant's service, knew, or ever heard, prior to the accident, that the engineer drank intoxicating liquors. This left the only question to be determined by the jury whether the defendant was negligent in failing to learn as to habits of intoxication of the engineer. And defendant insists that there was no testimony introduced in the case tending to prove such negligence on the part of the defendant. Whether defendant was negligent in the particular instance under consideration depended upon the degree of care required of it in the employment and oversight of a servant in the position of engineer of a locomotive engine. If the engineer was addicted to the habitual use of intoxicating liquors to such excess that his intoxicated condition was observed and known by the employees and others coming in contact with him for a period covering several months of time, and if by inquiry or observation the officers of the company, during that time, would have discovered his unfitness for the position of engineer by reason of his habits of becoming intoxicated, the omission to make inquiry or to observe his condition is negligence fully as culpable as if they had employed a notoriously incompetent engineer without inquiry.

The record does not disclose when the engineer went into the employment of defendants. The testimony of the witness Bradley shows that he was running an engine of a gravel train as early as July preceding the accident to Jones, which occurred the middle of the month of April, 1882, and at the time testified to by Bradley the engineer was then drunk. Other witnesses testified to his drinking intoxicating liquors, and of being under the influence of liquor in the months of February, March and April preceding the accident, while he was still acting in the capacity of engineer of the gravel train. The jury found, in answer to the special questions submitted by the defendant's counsel, that the engineer was intoxicated at the time of the accident, and that

he had been in the habit of drinking intoxicating liquors to excess; also that before the accident he had been intoxicated or under the influence of liquor, when running his engine, three times. The first time mentioned by the jury was the same referred to by the witness Bradley, which was nine months previous to the accident. The others were during the months of February, March and April, as appears from the testimony of the witnesses Dunham and Church. The defendant introduced no testimony whatever.

We cannot say, in view of the testimony, that there was no evidence whatever upon which the jury could base a finding that the defendant was negligent in not ascertaining the habits of the engineer with respect to drinking intoxicating liquors to excess, and in retaining him in its employment after it knew or should have known, his unfitness for the position. No definite rule can be laid down as to what length of time must elapse, where actual notice is not shown, to charge the company with negligence in failing or neglecting to ascertain the habits of its employees with reference to drinking intoxicating liquors to excess. If they exercise due care and diligence in seeing that their employees are competent, careful and sober, and fail to discover any vicious habits, they cannot be held liable for negligently retaining incompetent men. The presumption is that they discharge their duty in this respect, and the burden of proof is upon those who assert negligence in the discharge of such duty. When however, as in this case, it is shown that the accident occurred through the negligent act of the servant, who was in an intoxicated condition, and when it is shown further that he was in the habit of drinking intoxicating liquors to excess, and such habit had extended over a period of nine months while in defendant's employ, and no actual knowledge or notice ever reached any superior officer of the engineer, we think the jury may be justified in concluding from such evidence that the defendant was negligent in failing to learn such habit and in retaining the engineer in its employment.

The testimony was such as to fairly overcome the presumption that defendant had discharged its duty, and to call upon

defendant to rebut the proof made showing its negligence. The evidence shows that the habits of the engineer could readily have been ascertained upon inquiry; and the length of time in which the engineer is shown to have indulged in this habit is quite convincing that the negligence consisted in not making proper inquiry.  The defendant was required to exercise reasonable care in its supervision of the conduct of its servants, with a view to ascertain whether they were fit or competent persons to be retained in its employment; but this duty must be performed with reference to the nature of the employment, and the dangers likely to be caused by the employment of unfit or incompetent persons. It was required to exercise a closer supervision over the habits and conduct of an engineer than over a brakeman or a common laborer. Indeed it is one of the most responsible positions connected with railroad service, and calls upon the employer not only to use reasonable care in the selection of competent men for the position, but reasonable diligence in seeing that they remain trustworthy in the discharge of their duties.  What is reasonable care and reasonable diligence in that respect is a question of fact for the jury.

In this case it was submitted to them under proper instructions, and their finding is conclusive upon the fact.

The judgment is affirmed.

The other Justices concurred.