INTERNATIONAL & GREAT NORTHERN R. R. CO. v. ROBERT TARVER.

No. 6125.

1.   **Railroad Employe—Risk, Etc.—Fellow Servant.**—An employe assumes to have capacity requisite to understand and perform the labor he undertakes, at least when the danger is patent.    Nor is an injury received in such employ (as in unloading iron rails from a car under the orders and working with a section gang) a cause of action against the railway company.

2.   **Fact Case.**—See facts where it is manifest that no cause of action existed.

APPEAL from Williamson.   Tried below before Hon. A. S. Walker. The facts are given in the opinion.

*Maxey & Fisher,* for appellant.—As to non-liability for injuries inflicted on servant by fellow servant.   G. H. & S. A. Ry. Co. v. Faber, 63 Texas, 344; Dallas v. G. C. & S. F. Ry. Co., 61 Texas, 197, 200–205; T. & P. Ry. Co. v. Harrington, 62 Texas, 597; R. R. Co. v. Rider, 62 Texas, 267–271; Mo. Pac. Ry. Co. v. Watts, 63 Texas, 549; Roth v. I. & G. N. R. R. Co., 4 Texas Law Rev., 4–8; H. & T. C. Ry. Co. v. Willie, 53 Texas, 318; Price v. H. D. N. Co., 46 Texas, 535; Robinson v. H. & T. C. Ry. Co., 46 Texas, 540; Wood on Master and Servant, sec. 419, p. 800; see too T. & N. O. Ry. Co. v. Crowder, 63 Texas, 502, 503 to 506; Mo. Pac. Ry. Co. v. Christman, 65 Texas, 369.

As to non-liability when servant knows or might know the danger. Lempe v. R. R. Co., 59 Texas, 19; Drew v. G. H. & S. A. Ry. Co., 59 Texas, 10; R. R. Co. v. McNamara, 59 Texas, 255–257; H. & T. C. Ry. Co. v. Fowler, 56 Texas, 452; H. & T. C. Ry. Co. v. Robinson, 46 Texas, 540; Wood on Master and Servant, secs. 366, 349; 2 Thompson on Negligence, 976, sec. 7; R. R. Co. v. Whitmore, 58 Texas, 288; Watson v. H. & T. C. Ry. Co., 58 Texas, 434.

*Fisher & Townes,* for appellee.—As to whether Burns and appellee were fellow servants.   Tex. & Mex. Ry. Co. v. Whitmore, 58 Texas, 287; Wall v. Tex. Pac. Ry. Co., 4 Texas Law Rev., 36; Cooley on Torts, 562–563; Deering on Neg., sec. 204, and authorities cited in note 9.

As to extra hazardous service.   I. & G. N. Ry. Co. v. Hester, 64 Texas, 401; Mo. Pac. Ry. Co. v. Watts, 64 Texas, 568; Cooley on Torts, 555, 556, note 1; Deering on Neg., secs. 196–201; Fairbank v. Haenezsehe, 73 Ill., 236; Chicago Ry. Co. v. Harney, 28 Ind., 28; Jones v. L. S. & M. S. Ry. Co., 49 Mich., 573; Daley v. Schoaf, 28 Hun, 314.

As to liability of master for injuries resulting from joint negligence of himself and a fellow servant of the injured party.   Cooley on Torts, 560, sec. 7; Deering on Neg., sec. 208; Grand Trunk Ry. Co. v. Cummings, 106 U. S., 700; Paulmeir v. Erie Ry. Co., 34 N. J., 151; McMahan v. Heuning, 1 McCrary, 516; Boyce v. Fitzpatrick, 80 Ind., 526; Coyzer v. Taylor, 10 Gray, 274; Perry v. Lonsing, 17 Hun, 34; Busch v. B. & C. R. R. Co., 29 Hun, 112; Booth v. B. & A. R. R. Co., 73 N. Y. 38; Pittsburg and Cin. R. R. Co. v. Henderson, 37 Ohio St., 549; Steller v. Chicago & N. W. Ry. Co., 46 Wis., 497.

HOBBY, JUDGE. —Plaintiff recovered judgment in the sum of $500 against the defendant for injuries inflicted upon his person while in defendant's employ by a fellow servant.

There are several assignments relied upon for a reversal of the judg-

ment, but in our opinion this appeal can be disposed of under the eleventh assignment of error, which is as follows:

"The verdict of the jury is contrary to and against both the law and the evidence: (1) Because the proof showed that the work in which plaintiff was injured was the usual and ordinary work of a section hand; (2) because the plaintiff's own testimony and that of the other section hands conclusively showed that plaintiff was fully aware of the perils to which the performance of the duty to which he was assigned exposed him, and that, with such knowledge and the right to leave the employ of the defendant and resting under no threat of discharge, he voluntarily undertook the performance of the work assigned him; (3) because the testimony without conflict showed that the injury of which he complains resulted directly and proximately from the act of his fellow servant Wethsby; and (4) because the jury had been instructed in special instruction No. 2, given at the request of defendant, that the undertaking of a service attended with apparent peril known to the servant would relieve the master from liability for resulting injury when the servant was a free agent and at liberty to leave the employ of the master."

Conceding the petition to have set forth a good cause of action, and accepting in its strongest aspect the testimony of the plaintiff himself in support of it, it is apparent that the verdict can not be sustained by the evidence contained in the record.

The plaintiff Tarver says that "in the fall of 1885 he was a section hand in the employ of the defendant on the section of its road between Round Rock and Georgetown. His boss was one Burns, who was in charge of the gang of which plaintiff was a member. His former boss was one Allen." At the place mentioned and "on the 1st day of December, 1885, he was called upon by Burns to unload a car loaded with railroad iron. The car was near a switch at Round Rock, loaded with big iron rails, 30 feet in length, weighing about 500 pounds." Plaintiff told Burns when he was directed to unload the car that he "had never unloaded iron before and knew nothing about the work. Burns told us we had to unload the car and we did it." Plaintiff was placed at one end of the car (it being flat) and one Smith, another section hand, at the other end, plaintiff being at one end of a rail of iron and Smith at the other. Burns and one Wethsby occupied corresponding positions on the other side of the car, Wethsby being at the same end of the car with plaintiff, Burns occupying the same end with Smith. The parties in unloading stood facing out from the car, Wethsby and plaintiff having their backs opposite each other, Smith and Burns similarly situated with reference to each other. The process of unloading was as follows: "One man would lift up one end of the rail and drop it over the side of the car and push it along until it would fall off of one side of the car." Burns was "hurrying us up all the time." It required all of plaintiff's strength

to lift one end of the large rails.   When about one-half of the load had been taken off the plaintiff received his injury.   He had "the end of a rail in his hand, lifting it up.   Wethsby who was behind him in some way shoved against him and caused him to drop the rail he had on his foot." His "foot was mashed and squashed, the skin was loose all around it." He was disabled for seven months.   It was one month before he could walk, suffered great pain until in May.   His wages were worth $29.91 a month when injured.   "Wethsby falling against him caused him to let the rail fall and hurt his foot."   Burns at the time was cursing Wethsby, saying "Damn it, pick it up and throw it off—aint you never going to learn railroad work?"   Plaintiff "threw off the rails because Burns told him to do so."   Burns had the right to discharge plaintiff.   Plaintiff had never seen section hands do that sort of work.   Never worked as section hand on any other road, nor had he seen section hands unload railroad iron before.   The work could be seen to be dangerous, and plaintiff knew it to be dangerous.   Spoke to Burns about it.   Plaintiff "had the right to leave the service of defendant if he wanted to.   Burns made no threat to discharge me."   The section gang was composed of Smith, Wethsby, Burns, and plaintiff.   Wethsby was a fellow servant.   His body came in contact with plaintiff, and the latter dropped the rail.

We have endeavored to faithfully quote the testimony of the plaintiff, which is corroborated by other evidence.   And it is shown by plaintiff's witnesses, without resorting to the defendant's, that under Allen (the boss who appears to have been Burns's predecessor) unloading railroad iron was a part of the service of the gang, though it does appear that this was the plaintiff's first experience in this line of duty.   It is also shown that a different mode was adopted by Allen.   But it is not controverted that the manner of unloading described by the plaintiff was proper and usual with all gangs.   It nowhere appears that Wethsby was incompetent, or that plaintiff's fellow servants employed by Burns were.

That plaintiff can not recover for injuries inflicted by a fellow-servant under the circumstances detailed by him, is too well recognized to require the citation of authorities.   As there was no proof tending to show that Burns was guilty of negligence in employing incompetent fellow servants of plaintiff, plaintiff's recovery must rest upon either the negligence of his fellow servant Wethsby, or the negligence of Burns in subjecting him to risks and dangers in the particular service required and which was not contemplated in his contract of employment.   That he can not recover upon the ground of the negligence of Wethsby is as we have said well settled, if that negligence had been shown, because Wethsby was a coemploye with plaintiff.   Moreover, the evidence fails to establish negligence in Wethsby.

If there were risks and dangers incident to the unloading of the car, it was undisputed that this service was within the line of the duty

required of the section gang and which its members had engaged to perform, and it is a conclusion of law if this service was shown to be hazardous that it must have been contemplated by the plaintiff when the contract of employment was made. In this case however whatever hazard attended the work was well known to plaintiff. He says "it could be seen to be dangerous."

He engaged in the performance of the work willingly, and it being a part of the service he contracted to perform he assumed to have the capacity requisite to understand and execute it properly. It is not pretended that he was threatened even with a discharge if he failed to do the work, though we do not regard that circumstance as at all important in view of the other evidence.

It is apparent we think from the plaintiff's case as disclosed by his own testimony that the judgment can not stand without a total disregard of the law now well settled and recognized as founded upon sound principles. Dallas v. G. C. & S. F. R. R. Co., 61 Texas, 201; G. H. & S. A. R. R. Co. v. Faber, 65 Texas, 344; T. & N. O. R. R. Co. v. Crowder, 65 Texas, 503; Cooley on Torts, 543 *et seq.* and cases cited.

We are of opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 18, 1888.