DALY, Administratrix, Appellant, vs. SANG and another, Respondents.

*October 23 — November 8, 1895.*

*Master and servant: Death caused by incompetency of fellow-servant: Assumption of risk: Means of knowledge.*

> Where it is not shown that an employee had actual knowledge of the incompetency and carelessness of a co-employee, or that, under the circumstances which necessarily attended the performance of his duties, he could have observed the same, it cannot be held that he was chargeable with knowledge of such incompetency and carelessness so as to preclude a recovery for his death caused thereby.

APPEAL from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Reversed.*

This action is to recover damages sustained by the death of the plaintiff's intestate and husband, Carroll Daly, caused by the alleged negligence of the defendants while he was in their employment in the construction of an iron ore dock in Superior. The particular negligence alleged and relied upon is to the effect that the defendants, as copartners, disregarding their duties, employed an incompetent, unskilful, and grossly negligent and careless engineer to run, manage, and operate the engine, machinery, and appliances used in the construction of said dock, and then retained said engineer in their employment, with full knowledge of such incompetency, unskilfulness, negligence, and carelessness, and that the same was the direct and proximate cause of such death.

The defendants answered by way of admissions, denials, and allegations to the effect that said Carroll was guilty of contributory negligence, or the negligence of his co-employee, which risk had been assumed by the said Carroll.

At the close of the evidence on the part of the plaintiff the court granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *Monson & Vaughn* and *Murphy & Remington*, and oral argument by *F. H. Remington*.

For the respondents there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *W. D. Dwyer*. They contended, *inter alia*, that when a co-servant is injured through the incompetency of a fellow-servant, and he knows or has the same means of knowing of such incompetency as the master has, he cannot recover for injuries resulting to him from such servant's negligent acts, because he is chargeable with negligence in not informing the master if he knew the fact, or if he did not he is equally chargeable with negligence with the master for not knowing it. And if he did know it, and with such knowledge remained in the service, he is treated as assuming all the risks incident to such incompetency or unskilfulness. Wood, Master & S. § 422, and cases cited in notes 1, 2; *Kroy v. C., R. I. & P. R. Co.* 32 Iowa, 357; *Kansas P. R. Co. v. Peavey,* 34 Kan. 472; *Hatt v. Nay,* 144 Mass. 186; *Lake Shore & M. S. R. Co. v. Stupak,* 108 Ind. 1, and cases cited; *Laning v. N. Y. C. R. Co.* 49 N. Y. 525; *Lake Shore & M. S. R. Co. v. Knittal,* 33 Ohio St. 468; *Hayden v. Smithville Mfg. Co.* 29 Conn. 548; *U. S. R. S. Co. v. Wilder,* 116 Ill. 109.

CASSODAY, C. J. There is evidence tending to prove that at the time of the injury a large portion of the framework of the iron ore dock had been constructed to the height of fifty-two feet above the sills, which were two and one-half

Daly vs. Sang and another.

feet above the water; that such structure was fifty-two feet wide and one hundred feet long, more or less; that the engine was on the top of such structure, and towards the south end; that one Nelson was the engineer in charge of and operating the engine at the time, and had been for two weeks or more immediately before; that the derrick was on the top of the structure, and some fifty or sixty feet north of the engine, and they were both on the same level or plane with respect to each other; that one Maney had charge of the derrick at the time of the injury, and was foreman of the hoisting crew, and his duties included the giving of signals to the engineer and to see that the timbers were put in their proper place; that Maney at the time was standing on the structure a little north of the derrick, and about seventy-five feet north of Nelson; that the deceased, Carroll Daly, was at the time a little north of Maney, and some fifteen or eighteen feet from him, but upon a portion of the dock then being constructed, and some fourteen feet lower than the top of the structure upon which Maney was standing; that the piece of timber which was at the time being placed was twenty-six feet long and twelve by fourteen inches square, and had been hoisted in the usual way,— that is to say, this piece of timber was in the water near the dock on the east side; that a rope which was attached to the drum of the engine, and thence on or over the several pulleys of the derrick, including the one at the end of the arm or boom of the derrick reaching out over the dock, and from thence down and fastened to the middle, or near the middle, of the piece of timber in the water mentioned; that thereupon the engineer, acting as directed by the foreman by using signals, gradually raised the timber by means of the revolving drum, the rope and the derrick, with the pulleys and the arm or boom, to the desired height, whereupon one Maloney, who manipulated the boom line, and who was at the time standing on the east side of the dock, and about fifteen feet from

Maney, and in the neighborhood of eighteen feet from Daly, with the aid of Daly and others swung the timber mentioned around over the caps upon which it was to be placed; that just before the accident Daly was standing upon a plate about midway between the sides of the dock, with his hands upon this piece of timber, and the timber about as high as his head; that, keeping hold of this piece of timber, he moved two or three steps towards the east side of the dock, when suddenly the engineer, without any signal from the foreman or any one, and without any warning, so operated the engine as to let this piece of timber drop one or two feet, and the same struck Daly on his right side and knocked him off the plate upon which he was standing, and he fell to the bottom of the dock, some forty feet below, and was so badly injured that he died soon after. There is plenty of evidence tending to prove that the engineer, Nelson, was incompetent, negligent, and careless, and in the habit of disobeying and disregarding signals, and there is some evidence tending to prove that the defendants and McDonald, their superintendent in the construction of the dock, and whose duty it was to hire and discharge the men, knew of such incompetency, negligence, and carelessness of Nelson prior to the injury.

It is said that the nonsuit was granted on the ground that the deceased, Daly, had the same knowledge, and the same means of knowledge, of such incompetency, negligence, and carelessness of Nelson as the defendants had. We find no evidence in the record that Daly actually had such knowledge. At the time of the accident he was not where he could see Nelson, and it may be that he was at no time where he could observe, and, if he was, that he did observe, any such misconduct on the part of Nelson. But it is contended that he had the same means of knowledge that the defendants and McDonald had. Their duties, however, were general. His duties were to attend to the particular work

he was directed to do. The means of knowledge mentioned must have reference to the circumstances which necessarily attended the performance of his duties as such employee. Daly had worked for the defendants about two and a half months when the injury occurred. Nelson had worked there about two weeks, or a little more. It must be remembered that contributory negligence, when not disclosed by evidence on the part of the plaintiff, is purely a matter of defense, and so the burden is, ordinarily, on the defendant to prove it. *Hoye v. C. & N. W. R. Co.* 67 Wis. 15, and cases there cited. It is only when the facts and circumstances are not ambiguous, and there is no room for two honest and apparently reasonable conclusions, that a court may properly take a case from a jury. But when, as here, the facts and circumstances, though undisputed, are ambiguous, and of such a nature that reasonable men, unaffected by bias or prejudice, may disagree as to the inference or conclusion to be drawn from them, then the case should be submitted to the jury. *Kaples v. Orth,* 61 Wis. 533, and cases there cited. As there must be a new trial, we do not feel called upon to say more.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

MARSHALL, J., took no part.