KAMP, Administratrix, Respondent, vs. COXE BROS. & Co., Appellant.

*February 26—June 10, 1904.*

*Master and servant: Death caused by incompetent fellow-servant: Liability: Knowledge of master: Contributory negligence: Assumption of risk: Court and jury: Evidence: Declarations of agent: Instructions to jury.*

1. In an action for the death of plaintiff's intestate alleged to have been caused by the fault of an incompetent and negligent fellow-servant in defendant's employ, the evidence is *held* to sustain findings in a special verdict that said fellow-servant was an incompetent or unfit person to be charged with the duties entrusted to him, and that defendant knew, or in the exercise of ordinary care ought to have known, of such incompetence or unfitness.

[2. Whether, in such case, the incompetence of the fellow-servant must have been brought to the knowledge of some representative of the defendant authorized to hire and discharge men, not determined.]

3. In its charge to the jury the trial court should persistently and carefully avoid, when speaking of controverted questions, phraseology which can be construed as intimating what the court believes to be established by the evidence.

4. Declarations of an agent as to past events are not admissible, as against his principal, to prove such events. So *held* as to the statement of an agent to the widow, made after an accident resulting in her husband's death, that the accident was due to negligence of a fellow-servant and that he had been habitually negligent prior thereto.

5. Upon the evidence in this case it is *held* to have been a question for the jury whether it was not contributory negligence for plaintiff's intestate to be within a coal hopper when he had no right to expect any warning would be given of the withdrawal of coal therefrom, which he knew might happen at any time, with probability of injury to him; and also a question for the jury whether the intestate did not have such knowledge of the unfitness of a fellow-servant (whose failure to give warning is alleged to have caused the accident) that he assumed the risk thereof by remaining in an employment likely to be affected thereby.

6. It was a question for the jury, also, whether the failure of the fellow-servant to give warning to the intestate in the hopper of the withdrawal of coal therefrom was negligent— this involving the inquiry as to whether injury to any person might reasonably have been anticipated as the result of such failure; and without a finding upon that question the special verdict was incomplete.

7. Where death of a servant is alleged to have resulted from the negligent act or omission of a fellow-servant whose incompetence was known to the employer, it is essential to the liability of the employer that such act or omission should have been in line with the known incompetence.

8. A master who negligently or knowingly employs or retains an incompetent servant is liable for injuries thereby resulting to fellow-servants who are not themselves negligent and have not assumed the risk.

9. The expression "negligently retains," as used in the above rule and in prior cases in this court, refers merely to negligence in failing to acquire knowledge of the incompetency. The liability for injuries occurring as above stated by reason of the retention of the servant after knowledge of his incompetency was in fact acquired, is absolute. *Maitland v. Gilbert P. Co.* 97 Wis. 476, limited.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

Action for damages resulting from death of plaintiff's husband on April 26, 1902, by negligence of defendant as his employer. Defendant maintained an extensive coalyard at Milwaukee, in which were a row of elevated hoppers or bins, the tops of which were about fifty feet from the ground, and which were twenty feet long, eight feet wide, and eighteen

feet deep. Over these hoppers ran a screen or sieve with different-sized mesh over each hopper, so as to distribute into them different sizes of coal as the same was received from vessels. The sieve was about four feet above the tops of the hoppers, and as the coal piled up in the middle of them it came in contact with the sieve so as to prevent other coal from coming through, and it was necessary for employees to get into such hopper when this occurred and shovel the coal away from the middle, which was called "trimming" the coal. Coal was taken from these hoppers by chutes in the bottoms running to wagons or cars, which drew it out so rapidly that an employee engaged in trimming was in danger of being drawn down into the coal and suffocated unless warned of the opening of the chute in time to escape. Defendant had given positive directions that such warning be always given and had imposed the duty of warning upon an employee, Hartkopf, whose duty it was also to direct the teamsters from which hopper to take a load of coal.

Plaintiff's decedent, who had previously been a teamster, was, on the day before his death, assigned to the duty of trimming coal in aid of another man, and on the early morning of April 26th was in hopper No. 1, containing the finest or dust coal, when a team was sent by Hartkopf for a load of such commodity, the chute in the bottom opened, and decedent was sucked down with the outflowing coal and smothered. It was claimed by plaintiff that Hartkopf was incompetent and negligent, to the knowledge of defendant. The latter, while controverting this fact, also claimed that there was no reason to expect any one to be trimming coal in hopper No. 1, which was known shortly before to be only about half full, so as to need no trimming, while other hoppers did need it.

By a special verdict it was found that it was Hartkopf's duty "to see to it that no one was in said hopper when the chute was opened;" that he did not warn decedent to get out of the hopper before allowing the driver to open the chute;

that at and before the time of the accident he was an incompetent or unfit person to be charged with the duty of warning; that the defendant knew, or ought in the exercise of ordinary care to have known, previous to the accident, that Hartkopf was so incompetent or unfit; that the defendant was guilty of a want of ordinary care in retaining said Hartkopf; that it ought to have foreseen that a personal injury to another might result from the retention of said Hartkopf in such duty; that such retention was the proximate cause of the injury; that decedent was guilty of no contributory negligence—the first and last of these findings being directed by the court. Defendant moved to reverse the answers to all of these questions except those finding that Hartkopf was charged with the duty of notification and failed to notify the decedent, and for judgment upon the verdict. Defendant also, at the close of the evidence, moved for direction of a verdict in its favor. Both of these motions were overruled, and judgment entered in plaintiff's favor, from which defendant brings this appeal.

For the appellant there were briefs by *Spooner & Rosecrantz,* and oral argument by *C. M. Rosecrantz.*

*J. C. Officer,* attorney, and *J. B. Doe,* of counsel, for the respondent.

The following opinion was filed April 19, 1904:

Dodge, J. Appellant's first and most urgent insistence is that there was no evidence upon which could stand the answers of the jury to the effect that Hartkopf was an incompetent or unfit person to be charged with the duty of warning coal trimmers when coal was to be drawn from hoppers, and that the defendant knew, or in the exercise of ordinary care ought to have known, of such incompetence or unfitness. We confess that the evidence upon these subjects was scanty and ambiguous, but that is not surprising, as most of it had to be drawn from those who would be thereby convicted of partici-

pating in any negligence chargeable to the defendant. There was, however, the testimony of a fellow employee that through many years of employment as a teamster he had never seen Hartkopf give a warning to a coal trimmer; also a suggestion of excitability, such as to perhaps convey the idea of unsteadiness. Hartkopf himself testified upon direct examination that he had been cautioned a great many times to see that these warnings were given, and that on several occasions he had been scolded, both by the superintendent and by the defendant's general manager, Kuesel, for carelessness in respect to giving these warnings. It is claimed by appellant that these answers were obviously the result of misunderstanding of the questions put to him, and that they are taken out of the case by his testimony on cross-examination that he was never scolded except for carelessness in sending out dirty coal or not "hustling out the teams." This contention, however, presents a question upon which both the jury and the trial court were far better qualified to judge than we can be. The difficulty with which this witness understood English and the immediate context of the colloquy in which his answers were given, cannot appear to us with the same certainty or clearness. Upon an at least possible construction of the whole testimony, this witness did testify that before the accident his inefficiency or carelessness in performance of this particular duty had more than once been the subject of criticism by his superiors, who in that respect represented the defendant. The jury and the trial judge, who saw the witness and listened to his testimony, have evidently approved this construction, and we cannot feel justified in substituting our judgment for theirs in a field where they enjoyed such superior opportunities for correct conclusion. The situation would be far different had the trial court deemed this evidence insufficient to support this verdict, and in his discretion set it aside. For these reasons we must decline to sustain appellant's contention that error was committed in the trial court's refusal to reverse the answers to these two questions.

In this immediate connection it may be as well to consider an assignment of error predicated upon an instruction given and one refused; that given being to the effect that the company was chargeable with such knowledge as was had by the general agent, Mr. Kuesel, or by the superintendent, Maas. The appellant asked an instruction to the effect that any incompetency must have been brought to the knowledge of some representative of the defendant authorized to hire and discharge men, and claims that the superintendent, Maas, is not shown to have had such authority. We shall not deem it necessary to discuss the correctness of the general rule contended for by defendant, as to which see *Ohio & M. R. Co. v. Collarn,* 73 Ind. 261, 272, and *Frazier v. P. R. Co.* 38 Pa. St. 104. We forego such discussion, because we think it clearly appears that Mr. Maas, the superintendent, had such authority, although no witness categorically so testifies. The testimony of the general manager of the Wisconsin business of the defendant, which is a Pennsylvania corporation, was to the effect that Maas was in entire charge of the yard, where a large number of men were employed in unloading, distributing, and shipping coal, and it appeared that one Burkhardt, who was a mere subordinate or foreman under Maas, had authority to hire and discharge men in the yard. It is rendered entirely obvious by the evidence that in all respects Burkhardt was a subordinate of, and controllable by, Maas, and that the latter's authority included all vested in Burkhardt and much more. Hence we think no error was committed in the instruction complained of, and no prejudice resulted from the refusal of the instruction requested by defendant, even if it were correct.

The same instruction is complained of because the court speaks of the incompetency of Hartkopf without express suggestion that it was still an unfound fact, whereby, counsel contends, the jury might have received an intimation that the court believed that incompetency to be established. As the judgment must be reversed on other grounds, we need do

no more than suggest the advisability of persistently and care-fully avoiding phraseology which is even possible of such construction, without declaring whether that now complained of is subject to criticism.

The second assignment of error is predicated upon the admission of plaintiff's testimony that after the accident she had a conversation with defendant's general sales agent in Wisconsin, Mr. Kuesel, in which he told her that the accident was due to Hartkopf's negligence in failing to warn her deceased husband, and that he had been habitually negligent prior to that. This was received as evidence both of the fact of Hartkopf's habitual negligence and of defendant's knowledge at a time prior to the making of the statement. Such ruling was erroneous on most elementary principles. Hardly any rule of law is better settled than that the declarations of an agent as to past events are not admissible to prove such events. *Clancy v. Barker* (Neb.) 98 N. W. 440; *Randall v. N. W. Tel. Co.* 54 Wis. 140, 144, 11 N. W. 419; *Stone v. N. W. Sleigh Co.* 70 Wis. 585, 36 N. W. 248; *Heddles v. C. & N. W. R. Co.* 74 Wis. 239, 252, 42 N. W. 237; *Ramsey v. Holmes E. P. Co.* 85 Wis. 174, 186, 55 N. W. 391; *Small v. McGovern,* 117 Wis. 608, 615, 94 N. W. 651; *Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809; *Chapman v. Erie R. Co.* 55 N. Y. 579. The last two cases are much relied on by respondent's counsel, and they serve excellently to indicate and illustrate the mental confusion which must have induced the offer and admission of this evidence. In the *Hupfer Case,* plaintiff having applied for leave to enter defendant's premises and examine hoops which had come from a broken vat, the superintendent, having authority to exhibit them, said, "Those are the hoops." This was admitted as the verbal part of the act which he was then doing on behalf of his principal—part of the *res gestæ.* It had in it nothing of narrative or declaration of any past event or pre-existing fact. Had the superintendent gone further, and said, "Those hoops

were in the same decayed condition prior to the accident,"
or, "I knew their condition then," such declaration would
have been inadmissible to prove such past fact, even if it
might have been received as characterizing the act of exhibit-
ing to plaintiff.   In the *Chapman Case* the disputed evi-
dence was a declaration made by defendant's superintendent
before the accident, and while he was retaining the unfit em-
ployee, to the effect that the latter was given to intoxication.
This was admitted as *res gestœ* to the very act then being done
by the superintendent on behalf of his principal, to show the
knowledge which he had while transacting the business.   The
court in that case expressly cautioned against the very mis-
apprehension into which respondent seems to have fallen.   It
remarked, "An admission afterward would stand upon a dif-
ferent footing."   The declaration now complained of, being
mere narrative of a past event, was hearsay and inadmissible,
but obviously prejudicial to defendant.   Its admission must
be held error.

Two assignments of error, which naturally associate them-
selves, arise upon the withdrawal from the jury of the ques-
tion of contributory negligence on the part of the decedent by
the court's assuming to answer the question on that subject,
and upon the refusal of defendant's request to submit by
question assumption of the risk.   In both of these respects
we think error was committed.   There was evidence to estab-
lish that no trimmer had any occasion to enter one of these
hoppers until it was so full as to at least approach the point
when the coal was piled up in the middle nearly four feet
above the top of the hopper; that in the course of business
there would be no reason to expect a trimmer to be in a hop-
per not in such condition; and that this one was, to Hart-
kopf's knowledge, only about half full.   Hence it might legit-
imately have been found that there was no likelihood of any
warning to one who might be there.   Decedent had been a
teamster for years, knowing the frequency with which wagons

were loaded from these hoppers, and might well be held to the expectation that at any moment a wagon load might be withdrawn from any of them. From such facts the jury might legitimately have drawn a conclusion that it was negligence for a man to conceal himself in this hopper when he had no right to expect that any warning would be given, and when he knew a load of coal was liable to be withdrawn therefrom at any time, to the probability of his injury. The question of negligence, like that of fraud and some others, presents a double function for the jury. Not alone must they resolve the doubt as to the specific acts and events, but more often than not the inference from the specific facts is one of fact to be drawn by a jury. We cannot agree with the trial court that it can be said as matter of law that no inference of negligence or want of ordinary care was warranted by the facts, tending to support which there was some evidence.

Again, it seems clear that there was evidence from which the jury might have found knowledge on the part of the deceased of any general unfitness on the part of Hartkopf to perform the duty of warning. ˙ Respondent is insistent that there was some proof of such general incapacity apparent from acquaintance with the man himself, but for some years the decedent had been under direction of Hartkopf, with full opportunity to observe his characteristics, manner of doing business, and the like. Of course, so far as he did have knowledge of Hartkopf's unfitness, he assumed the risk thereof by remaining in an employment likely to be affected thereby, and the court should, either by a question with regard to contributory negligence accompanied with proper instructions, or by a direct question as to the assumption of this risk, have allowed the jury to pass upon it. *Daily v. Sang,* 91 Wis. 336, 64 N. W. 997; *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554; *Dugal v. Chippewa Falls,* 101 Wis. 533, 77 N. W. 878.

Further assignment of error is based on the claim that the

facts found by the jury are insufficient to support judgment in favor of the plaintiff in that there was no finding that Hartkopf was guilty of negligence in failing to warn the decedent. If the first question—whether it was Hartkopf's duty to see that no one was in said hopper when the chute was opened—had been submitted to the jury, it might be argued that they had passed upon the question of what was demanded by due care, but, as this question was answered by the court, we cannot assume that it was intended to include the inquiry whether Hartkopf was negligent, if there was any evidence to support a negative finding as to that. Some of the evidence bearing upon this subject has already been recited in discussing the negligence of decedent. Of course, there was no negligence on Hartkopf's part in failing to give warning when coal was to be drawn from the hopper, unless, as a reasonably prudent man, he had some ground to anticipate that injury might probably result from such omission, even though his instructions—his duty to his employer—required him in all cases to visit and examine the hopper before drawing coal therefrom. There is, as we have said, some evidence to support the view that this hopper was only about half full, and that, as a result of that condition, there was no reason for any person to be therein. Hartkopf testified, as far as interruptions from plaintiff's counsel permitted, that this was the reason that he did not give warning on this occasion. We are persuaded that this raised a legitimate jury question as to whether, from the fact of failure to give warning under all the circumstances, there could result an inference of negligence, which of course included an inquiry whether injury to any person might reasonably have been anticipated as a result of such failure. Without such finding the verdict is incomplete, and if the first question was understood by the court to include such inquiry, then it was error to answer it as matter of law. Of course, too, it must appear that his negligent act was in line with the incompe-

tence proved against Hartkopf. Incompetence in one direction and negligence in an entirely different one, not at all suggested by the known incompetence, would not arouse liability. *Kliefoth v. N. W. Iron Co.* 98 Wis. 495, 74 N. W. 356.

A further assignment of error is predicated on the giving and refusal of instructions in rejection of appellant's contention that, even if the fellow-servant be unfit and the master have, or be chargeable with, knowledge of such unfitness before the accident, nevertheless there remains a question of fact whether his retention was negligent; i. e., was other than would have been the conduct of the great mass of mankind under like circumstances. This contention presents a refinement of distinction which has not often been treated in decided cases. Philosophically, of course, the master is liable only for negligence; that is, for conduct which he, as an ordinarily prudent person, ought to have foreseen might probably cause injury, and which is not up to the standard of care exercised by ordinarily careful persons under like circumstances. The conditions of his liability to a servant for negligence of an incompetent fellow-servant have generally been stated as the *negligent* employment or retention of such servant. *Cooper v. M. & P. du C. R. Co.* 23 Wis. 668, 671; *Hoth v. Peters,* 55 Wis. 405, 413, 13 N. W. 219; *Maitland v. Gilbert P. Co.* 97 Wis. 476, 490, 72 N. W. 1124; 34 Am. Dig. (Century ed.) 863, § 343[a]; Bailey, Master's Liab. 47; 1 Shearm. & R. Neg. § 191; 7 Am. & Eng. Ency. of Law (1st ed.) 844. Nevertheless multitudinous authorities might be cited sustaining liability solely upon the fact that the incompetent was known to be such prior to the injury, there being no discussion upon the necessity of a further finding of fact that the retention after the knowledge constituted negligence or was not such conduct as might have been expected from the ordinarily prudent man. Shearm. & R. Neg., *supra;* 2 Rorer, Railroads, 1179; *Daily v. Sang,* 91 Wis. 336,

339, 64 N. W. 997. In *Baulec v. N. Y. & H. R. Co.* 59 N. Y. 356, 359, liability is said to arise if the master "negligently *or knowingly*" employ or retain an incompetent servant. In *L. S. & M. S. R. Co. v. Stupak,* 123 Ind. 210, 23 N. E. 246, however, the distinction now pressed was carefully considered, and it was held that the mere fact of knowledge by the master was not sufficient to charge him for results of a servant's incompetence without a further finding or conclusive proof that the retention after knowledge was inconsistent with due care. The court pointed out that, after information of a servant's incompetence was received by a master, it might well be consistent with reasonable care and diligence to postpone his summary discharge long enough to investigate as to the truth of such information, and, even after being convinced of the incompetence, some reasonable time might be imperatively necessary before the discharge; hence that some delay might be consistent with ordinary care. It was also said, however, that if it appeared that unnecessary delay intervened the court could declare the negligence of defendant as matter of law. That case has been followed in *Louisville, N. A. & C. R. Co. v. Breedlove,* 10 Ind. App. 657, 38 N. E. 357, and *Scheiber v. U. T. Co.* 153 Ind. 609, 613, 55 N. E. 742. The same rule is stated in Bailey, Master's Liab. 64, and 7 Am. & Eng. Ency. of Law (1st ed.) 844, footnote 1, and 12 Id. (2d ed.) 920, note 2, on the authority of *Ross v. C., M. & St. P. R. Co.* 8 Fed. 544, which on examination is found to make no reference to the subject, but merely to hold that an employee may remain a reasonable time after notice to his employer of incompetence of a fellow-servant in reliance on a promise to remove the latter, without losing right of recovery for injury meanwhile caused by such incompetence. That rule, instead of supporting the text, tends to refute it, as we shall show later. It is disappointing to find text-writers, on whom the profession and the courts would like to rely, thus stating an important general

rule and citing in its support cases which have no such tend-
ency.

In considering the doctrine of the Indiana cases above·
cited, it must be observed that the field of reasonable dili-
gence accorded the master is really two fields: first, that of
investigation after receiving some information that an em-
ployee is incompetent, in order to ascertain the facts, sec-·
ondly, that of dispensing with his services after being con-
vinced of the incompetence.   The right of investigation is
recognized in *Hughes v. B. & O. R. Co.* 164 Pa. St. 178, 30·
Atl. 383, and *Cobb v. Simon,* 119 Wis. 597, 97 N. W. 276.
It is not in conflict with the rule imposing liability for know-
ingly retaining an incompetent.   As stated in *Cobb v. Simon,.*
the information may be of any grade of definiteness or au-
thenticity, mere idle rumor, or unfounded gossip which ought
not to cause the discharge of a faithful and competent em-
ployee.   Such information cannot be said, certainly as matter·
of law, to charge the master with knowledge of the fact
rumored, even if it exists.   That question, however, is not in
this case, for the jury have found the fact of knowledge that
Hartkopf was incompetent, thus eliminating the necessity
of any further investigation by the master with reference
thereto.   The exact question raised here is whether the law
does or should recognize a question of fact as to the reason-
able diligence of an employer in failing to discharge an in-
competent servant for some time after knowledge of the in-
competency, in deference, for example, to the difficulty of ob-
taining a substitute or to the inconvenience to a going busi-
ness which may result from dispensing with the service al-
together.   *L. S. & M. S. R. Co. v. Slupak,* 123 Ind. 210, 23
N. E. 246, presented the illustrative case of a railway en-
gineer upon whose services might depend the unavoidable·
running of a train to its destination; *Curran v. A. H. Stange
Co.* 98 Wis. 598, 74 N. W. 377, that of a sawyer upon whose
services depended the running of the whole sawmill.   Ob-

viously, when knowledge of the unfitness of such a man comes to the employer, the situation is serious if no substitute is at once obtainable. Very great damage may be suffered by the master from a momentary discharge. But is the situation any less serious to the other employees whose lives and bodies are jeopardized by every moment the service of the incompetent continues? Certainly not. Then on whom should the responsibility rest during any continuance of this peril? On the employee who has no knowledge of it and no opportunity to choose whether or not he will expose himself to it, or on the master who does know and who can exercise an election whether to suffer some pecuniary damage himself or to take the chances of injury to his employees?

The reason of the law, not to mention considerations of humanity, would seem to point to an answer. He who knowingly exposes another to an imminent peril should respond for the result. The philosophy of the law suffers no breach if courts declare that such conduct is *per se* negligence, and close their ears to the plea that the great mass of mankind might do the same thing under the circumstances. True, the employer of men is not an insurer, but when courts excuse him from any duty more than due care in ascertaining the existence of the incompetency of one whose conduct will imperil others they have sufficiently recognized that rule. If he is not negligent in ascertaining the fitness of such an employee when selected for the employment, nor in discovering the unfitness afterward, he is excused; but when he has, or is chargeable with, knowledge of incompetency, he should be liable for injury proximately resulting therefrom to those whom he exposes to the perils thereof, unless they, having knowledge, actual or constructive, choose to assume the risk. We think any other view inconsistent with the rule that during a reasonable time after protesting to the master the unfitness of a fellow-servant an employee remaining in reliance on promise to remove the incompetent may nevertheless recover for in-

.juries resulting.  *Maitland v. Gilbert P. Co.* 97 Wis. 476, 72
N. W. 1124; *Curran v. A. H. Stange Co., supra; Yerkes v.
N. P. R. Co.* 112 Wis. 184, 88 N. W. 33.  Under what we
may call the "Indiana doctrine" the employee could not re-
cover during that period because the master would not be lia-
ble if it were a reasonable time, consistently with due care,
·to obtain a careful substitute.

We are persuaded that an accurate statement of the true
rule on the subject is that stated in *Baulec v. N. Y. & H. R.
·Co.* 59 N. Y. 356, that the master who negligently or know-
ingly employs or retains an incompetent servant is liable for
injuries thereby resulting to fellow-servants who are not
themselves negligent and have not assumed the risk.  He is
liable always and independently of any other question of neg-
ligence if he, knowing the incompetence, employs or retains
him.  He also may be liable, though in fact ignorant, if by
·exercise of ordinary care he ought to have ascertained the in-
·competency, either at the time of the employment or subse-
·quently, though doubtless the master does not owe the same
activity of investigation to discover the incompetence of a
·servant once properly and carefully selected and employed
as he does at the original employment.  *Baulec v. N. Y. &
H. R. Co., supra; Whittaker v. Delaware & H. C. Co.* 126
N. Y. 544, 549, 27 N. E. 1042; *Hilts v. C. & G. T. R'y,* 55
Mich. 437, 21 N. W. 878; *Maitland v. Gilbert P. Co., supra.*
We are confident that this measure of duty and liability is in
accordance with the law as it has been administered in this
·state, and that the expressions "negligent retention" or "neg-
ligently retained," used in some of our own cases, refer
merely to negligence in failing to acquire knowledge of in-
·competency, never to conduct after that knowledge is in fact
acquired.  The case which perhaps has most appearance of
approving the doctrine that the question of due care as a fact
·for the jury is always involved in a case of injury from in-
·competence of a fellow-servant is *Maitland v. Gilbert P. Co.,*

*supra.* There it was claimed and disputed that the master had been notified of the servant's incompetence, but the court instructed that the master was "bound to furnish competent employees; if he fails to do so, he is liable for injuries caused by their incompetency." This obviously warranted recovery if the servant was incompetent, although the master had no knowledge of it and had exercised all due care in selecting him. This court held the instruction erroneous, because the master is only required to exercise ordinary care in *employing* servants. There was no discussion of the element of due care as involved in the retention, nor in any case of actual knowledge of unfitness. That case must not be read beyond its express words, which limited its rule to conduct in employing a servant. So limited, it entirely accords with the rule as quoted from the *Baulec Case.*

From what has been said, our conclusion is obvious that no error was committed in refusing to instruct as requested by appellant on this subject.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

The appellant moved for a rehearing.

In support of the motion there was a brief by *Spooner & Rosecrantz.* They contended that the appellant is entitled to a mandate directing the trial court to enter judgment in its favor upon the uncontradicted evidence. (1) The evidence that the hopper was only about half full, and that as a result of that condition there was no reason for any person to be in the hopper, was entirely undisputed; and there was an utter failure on plaintiff's part to prove the essential fact that Hartkopf, in the exercise of ordinary care, should have anticipated the presence of the deceased in the hopper. (2) Conceding the correctness of the construction given to Hartkopf's testimony, there was still nothing to support the finding of his incompetency. Evidence of a criticism or rep-

rimand was admissible only for the purpose of showing notice to defendant, and did not tend to establish the ultimate fact of incompetency. *Chapman v. E. R. Co.* 55 N. Y. 579; *McDermott v. H. & St. J. R. Co.* 87 Mo. 285; *International & G. N. R. Co. v. Tarver,* 72 Tex. 308.

For the respondent, in opposition to the motion there was a brief by *J. C. Officer,* attorney, and *Hoyt, Doe, Umbreit & Olwell,* of counsel.

The motion was denied June 10, 1904.