ZENTNER, Administrator, Respondent, vs. OSHKOSH GAS LIGHT COMPANY, Appellant.

*May 24—June 20, 1907.*

*Master and servant: Negligence: Killing of lineman by electric current: Assumption of risk.*

A lineman in the employ of an electric lighting company who was killed by a high potential current while replacing cross-arms which had been burned, on one of which were the wires carrying such current, and who knew that the current was on at the time, is *held* to have assumed the risk, so that there could be no recovery of damages for his death.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This is an action to recover damages sustained by reason of the death of the plaintiff's intestate while in the defendant's employ as lineman. The death occurred under the following circumstances as stated substantially in the brief of counsel for the plaintiff:

February 10, 1904, a fire occurred in Oshkosh known as

the Plummer fire. In the rear of the Plummer store, at the outer edge of the sidewalk and about eleven feet from the building, stood the pole in question. Before the fire it carried at the top police and fire-alarm wires; next below, two arms carrying telephone wires; next below and about twenty-five feet from the ground, the Oshkosh Electric Light & Power Company had two arms carrying electric wires; then came a cross-arm carrying four high potential currents, with 2,200 to 2,300 voltage, belonging to the defendant; and about three or four feet below this arm, another arm carrying three of defendant's secondary wires. The pole was badly burned from about eight or ten feet above the ground to the top, especially at the top. All the wires on the pole except the defendant's were removed from the pole the day of the fire. The pole was situated on the east side of the street running north and south. The old cross-arm carrying the high potential wires was on the south side of the pole, and there were two wires on each side of the pole. The wire furthest east at the time was a new insulated wire, spliced in immediately after the fire. The insulation was burned off the other three wires for about thirty or forty feet on each side of the pole. The weather was very cold at the time of the fire, and considerable ice froze on the pole from the water thrown on it by the fire department. The cross-arms carrying the defendant's wires were also badly charred.

Three days after the fire the deceased, who at the time was the defendant's only lineman, was ordered by the defendant's general superintendent, Mr. Wilson, to replace the burned cross-arms on the pole in question with new cross-arms. It was a mild day, and the pole and cross-arms were wet from the ice melting on the pole. The deceased proceeded with the work, and placed two new cross-arms on the north side of the pole directly opposite the two old burned cross-arms, and was assisted in the work by Pat Joy, a ground man or helper. Between 1 and 2 o'clock in the afternoon

the deceased was discovered burning on the pole. An experienced lineman, Robert Waters, and the superintendent of the defendant, Grant Hall, who happened to be near by, immediately went to rescue the deceased, but life was extinct before he was reached. The deceased was standing on the north side of the pole, with a safety belt around his body and the pole, with one foot on the new secondary cross-arm, the other foot resting in the iron climber stuck into the pole. The body was leaning toward the west, resting on the cross-arm and high potential wires, one hand resting on each of the two wires on the west side of the pole. Parts of both hands were burned off. The right arm was also burned on the inside about two inches from the elbow up into the armpit and about ten or twelve inches down the side. The right shoulder was burned also on the outside and there were several small burns on the body in other places.

The deceased was nineteen years of age at the time of the accident, had attended the German Catholic school from the time he was seven to twelve years of age, had worked for some time in a butcher shop, and for about two and one-half years had worked at inside wiring and as telephone lineman, and for about six or seven months immediately before his death had worked as lineman for the defendant on high potential wires.

Issue being joined and trial had, the jury at the close of the trial returned a special verdict to the effect (1) that the defendant, under the conditions present at the place where the deceased was killed, did not use ordinary care in not turning off the 2,200-volt current while he was making the repairs to the line carrying such current; (2) that the want of ordinary care thus found was the proximate cause of the death of the deceased; (3) that the deceased knew the current was on while he was making such repairs; (4) that there was no want of ordinary care on the part of the deceased which contributed to produce his death; (5) that

$3,250 will compensate the mother of the deceased for the pecuniary injuries which resulted to her from his death. From the judgment entered in favor of the plaintiff and against the defendant for the amount stated, the defendant appeals.

For the appellant there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *W. F. Vilas.*

For the respondent there was a brief by *Phillips & Hicks,* and oral argument by *E. R. Hicks.* They contended, *inter alia,* that the issuable facts only should be submitted to the jury and they are all embodied in the verdict, excluding the third question. *Byington v. Merrill,* 112 Wis. 211, 225; *Sladky v. Marinette L. Co.* 107 Wis. 250, 257; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307; *Peck v. Peck,* 124 Wis. 550, 553. It was improper to require the jury to determine a fact as to which there was no evidence except as an inference might be drawn. *Conrad v. Kelley,* 106 Wis. 252, 255. The verdict is not inconsistent. It merely contains an immaterial question which may be entirely disregarded. *Stache v. St. Paul F. & M. Ins. Co.* 49 Wis. 89; *Robinson v. Washburn,* 81 Wis. 404; *McKone v. Metropolitan L. Ins. Co.* 131 Wis. 243.

CASSODAY, C. J. This case was here on a former appeal and the judgment of nonsuit was reversed and the cause remanded for a new trial. 126 Wis. 196–202, 105 N. W. 911. The ground on which such nonsuit was granted was that the deceased was guilty of contributory negligence or had assumed the risk. Two members of this court were of the opinion that such ruling was correct. It was held, however, by a majority of the court that the evidence was sufficient to take the case to the jury on the question whether the defendant was negligent in not shutting off the high potential current while making repairs, and also on the question whether the deceased was guilty of contributory negligence,

or that form of it known as the assumption of risk. The opinion of this court on that appeal declares that the deceased "assumed the usual and ordinary risks incident to the employment in which he was engaged, but did not assume unusual or extraordinary risks, unless he in fact *knew* of them, or by the exercise of ordinary care and prudence *ought* to have known of them." 126 Wis. 199, 105 N. W. 913. The opinion on that appeal further states that "three expert witnesses testified that it is usual in making such repairs to shut off the high potential current from the wires, and there is no evidence to the contrary; nor can we say that this evidence is incredible or contrary to common knowledge." 126 Wis. 199, 105 N. W. 913. It also states that the deceased "had no actual knowledge of such extraordinary risk so far as appears from the evidence, and the circumstances are not so clear that we can say as matter of law that he, in the exercise of ordinary care, ought to have known. The question is one upon which there may be conflicting inferences, and hence properly a question for the jury." 126 Wis. 201, 105 N. W. 913. The "unusual or extraordinary risk" thus referred to was the leaving of the current on while making such repairs; and it was held that even that was assumed if the deceased had actual knowledge of the fact or ought to have known it by the exercise of ordinary care. On the last trial such questions were all submitted to the jury and were all answered favorably to the plaintiff except the third, by which the jury expressly found that the deceased did "know the current was on while he was making such repairs." The correctness of that finding is not questioned.

On the last trial, and to meet the situation thus presented by the decision of this court, the defendant presented as witnesses the two engineers in its employ at the time of the death of the deceased and for years immediately prior thereto, and they both testified to the effect that if the current is turned off the engineer in charge of the plant at the time knows it,

and that during the time they had been so employed by the defendant the current had never been turned off for the purpose of making outside repairs.  Such testimony is undisputed, and so the court charged the jury that:

"Risks of employment are always assumed when the servant knows or ought to have known the dangers incident to the conditions under which he works, and all ordinary risks and hazards of the occupation in which he is engaged are assumed, whether the servant appreciates them or not. Zentner, by engaging in the work of lineman for the defendant company, assumed the ordinary risks incident to such employment.  The evidence is undisputed that it was the custom of the defendant to keep the current on while repairs were being made on the high potential line under all ordinary conditions and circumstances.  Zentner must be presumed to have known of this custom."

The jury manifestly appreciated the importance of the question, for, on returning to the court, they requested that the court's instructions on the third question of the special verdict should be read to them, and the foreman then asked the court: "Is not that a question of vital importance as bearing upon the other questions?"  The court replied to the effect that "it was for the jury to determine the facts upon the evidence under the instructions of the court, and for the court to render judgment upon the facts found by the jury."  Thus it appears, not only from the deliberate finding of the jury but from the undisputed evidence, that the deceased did "know the current was on while he was making such repairs."  And so we are squarely confronted with the question propounded by Mr. Justice KERWIN on the former appeal: "Did the evidence so conclusively establish contributory negligence, or that form thereof known as assumption of risk, on the part of deceased, as to warrant the court in taking the case from the jury?"  According to the undisputed evidence and the charge of the trial court above quoted it did.  There seems to be no escape from the conclusion

that the deceased was guilty of that phase of contributory negligence known as the assumption of risk. *Schlemmer v. Buffalo, R. & P. R. Co.* 205 U. S. 1, 27 Sup. Ct. 407. The facts mentioned being undisputed and as declared by the trial court, it was manifest error to refuse the defendant's motion to change the answer to the fourth question of the special verdict from "No" to "Yes" and then enter judgment thereon in favor of the defendant.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the defendant as indicated in this opinion.