ZENTNER, Administrator, Appellant, vs. OSHKOSH GAS LIGHT
COMPANY, Respondent.

*October 26—November 14, 1905.*

*Master and servant: Negligence: Death of lineman repairing wires:*
*Failure to shut off electric current: Contributory negligence:*
*Questions for jury: Fellow-servants: Evidence: Statement by of-*
*ficer of corporation.*

1. In an action against an electric lighting company for the death
of an employee who was killed by a high potential current while
engaged in repairing wires, poles, etc., which had been damaged
by a fire and were coated with ice, the evidence showed, among
other things, that the deceased had been set at this work by
defendant's superintendent, and that it is customary to turn off
high potential currents during the making of such repairs; and
it was not shown conclusively that deceased had not prosecuted
the work with reasonable dispatch and in the ordinary manner,
or that he had any notice of intended departure from the cus-
tom as to shutting off the current. *Held,* that the question of
defendant's negligence and the question of contributory negli-
gence or assumption of risk by deceased were for the jury.
2. The negligence, if any, of the superintendent in respect to the
current (which was either already on or turned on in the reg-
ular operation of the plant) was not the negligence of a fellow-
servant of the deceased. *Williams v. North Wis. L. Co.* 124
Wis. 328, distinguished.
3. A statement by the president of the defendant company, made to
the brothers of the deceased some time after the accident, to the
effect that it was the intention to have the current off, not being
a part of the *res gestæ,* but merely in the nature of a narrative
of past events, was not admissible in evidence against the de-
fendant.

APPEAL from a judgment of the circuit court for Winne-
bago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This action was brought by *Peter J. Zentner,* as adminis-
trator, to recover damages for the death of one Louis Zentner,
alleged to have been killed through the negligence of the de-
fendant while in its employ as a lineman on the 13th day of
February, 1904. The answer denies the material allegations

of the complaint, and alleges contributory negligence on the part of plaintiff's decedent.    After the introduction of plaintiff's evidence the court, on motion of defendant, granted a nonsuit, and judgment was entered thereon, from which this appeal was taken.

There is testimony tending to show that plaintiff's decedent was, at the time of his death, nineteen years of age and had worked as a lineman for defendant six or seven months; that before this he had worked for a telephone company and also a gaslight company, but had never done any high potential work before he worked for defendant; that he never had any schooling or special instruction in electrical work, and never had been away from home where electrical engineering of any kind was taught; that about February 10, 1904, there was a severe fire in the city of Oshkosh; that a line of wires and poles of defendant in the rear of the burned buildings was badly damaged by such fire; that one of these poles, the one upon which decedent was killed, was badly scorched and burned, the upper end being entirely destroyed and the attachments badly damaged; that the pole, wires, and cross-arms in question during the fire became coated with ice occasioned by water thrown by the fire department, and this condition continued until the time of the accident; that the wires on the pole were three secondary wires belonging to defendant, and next above these four primary wires supported by cross-arms, two on each side of the pole; that prior to the fire there had been above these wires of defendant two cross-arms supporting electric wires of another company, and above these other arms supporting telephone and fire-alarm wires; that all wires except those of defendant were removed the day after the fire; that the insulation was burned off the wires for a distance of fifty feet on each side of the pole in question, and the pole was charred down to within six or eight feet of the ground, and from there it was wrapped with wire; that this pole was hollow at the butt, running up fifteen or eighteen

feet; that this hollow and rotten condition would tend to make it a better conductor when wet; that a pole is a good insulation to work on wires if dry, but if wet there is no reason why it would not carry the current from the wire to the body, into the pole and to the ground; that the body would form a connection between the two wires if touched, so as to pass the current from one to the other; that decedent went to work on the morning of the accident under the direction of defendant to make the repairs in the vicinity of this pole, and returned about one o'clock in the afternoon and went to work on the pole in question, and was killed about an hour later; that he had placed one or two new cross-arms on the north side of the pole, one in the primary wires which carried 2200 volts, and which is a dangerous voltage, leaving two old cross-arms on the opposite side; that while at work and standing with one foot on the secondary cross-arm, the other in a hook or climber struck into the pole and fastened to his boot, with a safety belt around his body and the pole bringing the primary wires even with his hips, he was discovered burning on the wires, death following immediately; that the body was hanging over towards the two wires on the west side of the pole, his right hand or arm lying on the insulator of the outside wire, burned off at the wrist where it touched the wire, and the left hand appeared to have grasped the wire next to the pole, and was partially burned off; that the wires on the west side of the pole were on the cross-arm; that those nearest the pole had been untied from the insulator and had dropped down upon the cross-arm; that the outside wire was still tied to the insulator; that the customary method in making repairs is to shut off the current, and it is not customary for companies to make such repairs with the current on.

For the appellant there was a brief by *Phillips & Hicks,* and oral argument by *E. R. Hicks.*

For the respondent there was a brief by *Vilas, Vilas & Freeman,* and oral argument by *E. P. Vilas.*

KERWIN, J. .It is clear that the employment in which the plaintiff's intestate was engaged was one involving possible contact with a highly dangerous agency.   He knew this, and it was his duty in such employment to exercise such degree of care as was reasonably commensurate with the usual and ordinary dangers to be expected under the circumstances; that is, such care and prudence as ordinarily prudent and careful persons engaged in such employment usually exercise under the same or similar circumstances.   He assumed the usual and ordinary risks incident to the employment in which he was engaged, but did not assume unusual or extraordinary risks, unless he in fact knew of them, or by the exercise of ordinary care and prudence ought to have known of them.

On the other hand it was the duty of the defendant to conduct its business with ordinary care in view of the highly dangerous character of the agency with which it dealt.   It was bound to exercise at least that degree of care which is usually exercised by ordinarily careful persons engaged in like business under the same or similar circumstances, and if it failed to do so it was guilty of negligence.

It appears from the evidence that the deceased was set at work on the morning of the accident making repairs upon the pole in question and upon an adjoining pole, there being two naked wires thereon, which when in use carried a current of 2200 volts; that he worked during the forenoon without injury, and that defendant's superintendent was upon the ground about the middle of the forenoon while deceased was upon the pole in question or the adjoining pole; that deceased worked upon the pole about an hour after dinner, when he received the high current from the wires which killed him. Three expert witnesses testified that it is usual in making such repairs to shut off the high potential current from the wires, and there is no evidence to the contrary, nor can we say that this evidence is incredible or contrary to common knowledge.

Two questions necessarily arose upon the motion for non-suit: first, Was there any evidence of negligence on the part of the defendant proximately causing the death? and second, If so, did the evidence so conclusively establish contributory negligence, or that form thereof known as assumption of risk, on the part of deceased as to warrant the court in taking the case from the jury?

1. It is well established that "if there is any credible evidence in the case from which a reasonable inference may be drawn in support of the claim of either party to the action, then the court cannot assume to decide the controversy as a matter of law. Under such circumstances the question of fact must be submitted to and determined by a jury." *Morgan v. Pleshek,* 120 Wis. 306, 308, 97 N. W. 916; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138; *Zimmer v. Fox River V. E. R. Co.* 118 Wis. 614, 616, 95 N. W. 957. The officers of defendant knew that repairs upon the poles had been commenced in the forenoon, and there is nothing to show that they had reason to believe such repairs had been completed at the time of the accident. It was the duty of defendant to conduct its business at all times with the care ordinarily used by like concerns under like circumstances; there was competent evidence entirely credible that high potential currents are ordinarily turned off during the making of such repairs, and no evidence that the defendant ordinarily followed a different custom, or, if it did, that the intestate had any knowledge of it. It follows, therefore, that the question of defendant's negligence was for the jury.

2. As to the question of contributory negligence, the evidence shows that the deceased at the time of his death was engaged in the work at which he had been set by the superintendent of the defendant, and there is no evidence showing conclusively that he had not prosecuted that work with reasonable and ordinary dispatch and in the ordinary manner. He had the right to assume that the defendant's officers would

conduct the business in the manner usual when repairs were being made, which according to the evidence required the cutting off of the current from the wires. It is not shown that he had any notice of intended departure from that custom. Such a departure involved an unusual and extraordinary risk, which under the law he did not assume, unless he had actual knowledge thereof, or unless as a reasonably careful man he, by the exercise of ordinary care, should have known of it. He had no actual knowledge of such extraordinary risk so far as appears from the evidence, and the circumstances are not so clear that we can say as matter of law that he, in the exercise of ordinary care, ought to have known. The question is one upon which there may be conflicting inferences, and hence properly a question for the jury. *Revolinski v. Adams C. Co.* 118 Wis. 324, 95 N. W. 122; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W. 535.

3. Testimony was admitted against the defendant's objection to the effect that Mr. Sawyer, president of the defendant company, stated that it was their intention to have the current off. This statement was made in a conversation had between Mr. Sawyer and the brothers of deceased one afternoon subsequent to the accident. These statements made by Mr. Sawyer did not relate to a present transaction while he as an officer was acting within the scope of his duty, and as a part of the *res gestæ*. They were not declarations respecting present occurrences and part of the *res gestæ*, but in the nature of a narrative of past events and not competent as evidence against the defendant, and should have been excluded. *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366; *Hupfer v. Nat. D. Co.* 119 Wis. 417, 96 N. W. 809; *Tiborsky v. C., M. & St. P. R. Co.* 124 Wis. 243, 102 N. W. 549; *Rideout v. Winnebago T. Co.* 123 Wis. 297, 101 N. W. 672; 1 Jones, Evidence, § 270.

This case differs from *Williams v. North Wis. L. Co.* 124 Wis. 328, 102 N. W. 589, in this: in the latter the lineman

and the superintendent who turned on the current were engaged in the common employment of repairing the plant, and so were fellow-servants; in the former the current was either turned on in the regular operation of the plant, or there was a failure to temporarily cease such operation.    In either event, if the superintendent was the one who acted or failed to act, his relation to the lineman was not that of a fellow-servant. It therefore follows that the court erred in granting the non-suit.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.

MARSHALL and SIEBECKER, JJ., dissent.