Lehan v. Chicago & N. W. R. Co. 169 Wis. 327.

LEHAN, Respondent, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

*April 29—May 27, 1919.*

*Carriers: Ejection of passenger from train: Negligence: Issues:*
*.Knowledge of event: Evidence: Sufficiency: Res gestæ:*
*Hearsay: Declarations of agents: Production of reports and*
*statements: Appeal: Findings of jury: Weight on review.*

1. In an action for injuries sustained by plaintiff while being
ejected from defendant's passenger train, where plaintiff
called defendant's claim agent at the trial as an adverse wit-.
ness, who without objection gave the names of witnesses with
whom he had talked and stated that he possessed written re-
ports by defendant's local physicians, his compelled testimony,
based on such reports and interviews, that he understood that
two of defendant's physicians had treated plaintiff and that he
presumed that defendant had paid for such treatment was
hearsay and inadmissible.

2. Statements of defendant's witnesses to its claim agent and writ-
ten reports by defendant's local physicians, sought to be pro-
duced and used, either as of employees of defendant or of per-
sons· in no wise connected with it, were no part of the *res
gestæ.*

3. Nor were such statements admissible as tending to show notice
to defendant of the happening of the event, there being no
such issue in the case, or as being in the nature of declarations
of any person who could thereby bind defendant.

4. Such documents, then in the possession of defendant's claim
agent, were not admissible as evidence in plaintiff's behalf, nor
were they documents which the party holding them should be
required to produce at the desire of the other party.

5. The supreme court will attach great weight to the findings of a
jury on questions of fact submitted to them, and, where they
are supported by credible evidence, they will not be reversed.

6. On the evidence in this case and in view of the manner in which
the trial was conducted, it is *held* that the verdict for plaintiff
was the result of passion or prejudice and against the over-
whelming testimony, and cannot stand.

APPEAL from a judgment of the municipal court of
Brown county: N. J. MONAHAN, Judge. *Reversed.*

This action was brought for personal injuries claimed to
have been received by plaintiff while being ejected from one

of defendant's passenger trains at Rhinelander, Wisconsin, on October 16, 1916, at about 11 o'clock p. m.

Defendant admitted the purchase by plaintiff of a ticket for passage on its train from Rhinelander to Appleton Junction, and by way of answer alleged that when plaintiff presented himself as a passenger to board the train he was intoxicated and under the influence of liquor; that he was refused entrance to the train by the defendant's employees, and that in spite of such refusal he forced his way on to such train, and that immediately thereafter the train was stopped and the plaintiff, carefully and without unnecessary force and without injury to him, lawfully removed and ejected from the said train, the sole reason being his intoxicated condition.

Upon the trial the defendant was permitted to amend its answer by alleging as an additional reason in justification for the ejection of the plaintiff the alleged fact that the plaintiff while upon said train used violent, abusive, profane, and indecent language, and for which use the plaintiff was lawfully removed and ejected without injury from the train.

The substance of the special verdict and the answers returned by the jury thereto were as follows:

(1) The defendant company accepted the plaintiff as a passenger on its train on the night in question.

(2) The plaintiff was not intoxicated when he entered upon the train.

(3) He did not use and utter abusive, profane, and indecent language while upon said train.

(4) The defendant's employees used excessive force upon plaintiff in causing his ejection.

(5) The defendant's employees did not use proper care in causing his ejection.

(6) The plaintiff sustained injuries to his person while on and being ejected from the train.

(7) Such injuries were caused by the act or omission of defendant's employees.

(8) The amount assessed for plaintiff's damages was $8,000.

From a judgment thereupon in favor of the plaintiff, defendant has appealed.

*R. N. Van Doren* of Milwaukee, for the appellant.

For the respondent there was a brief by *Martin, Martin & Martin* of Green Bay, and oral argument by *Joseph Martin*.

ESCHWEILER, J.   On the trial the plaintiff called as an adverse witness defendant's claim agent who had investigated this case and obtained written statements from various persons.   He testified, apparently without objection being interposed, giving the names and addresses of the witnesses with whom he had talked and that he had in his possession written reports made by the local physicians of the defendant company at Rhinelander and Appleton.   Demand was made by plaintiff's counsel for the production of the report of the physician at Rhinelander, but that, on objection, was refused.   He was then compelled to answer over objection that, based upon such report, he understood there had been a treatment by the company's doctor of the plaintiff and gave the number of days of such treatment.   Also further, that from knowledge obtained only by interviews with the physician at Appleton he was again permitted to testify as to plaintiff's treatment by that physician, and that he presumed the defendant had paid the bill for such treatment, and then, over vigorous protest and objection on the ground that such method of examination was eliciting hearsay, incompetent, and irrelevant testimony, he was still further required to testify as to such matters.

All this was hearsay and there was nothing of material, relevant, or competent testimony on the issues that was obtained or could be obtained from this witness through all of his protracted examination.   It should have been promptly and firmly halted by the trial court when the objections were interposed.   Permitting the examination of the witness to

proceed in the manner in which it was being conducted could very well have a prejudicial effect upon a jury.

Plaintiff's counsel further demanded, at the time of the examination of other witnesses called by the defendant, for the production of the statements made by such witnesses respectively to the claim agent. Upon cross-examination of O'Brien, the city policeman, and one of such witnesses, such demand was stated to be for the purpose of cross-examination. Upon refusal of defendant's counsel to produce it on the ground that it was not a proper matter of evidence the court stated, "I don't see how I can compel them to produce it." After such ruling and further refusal to produce such statement the witness was then asked as to whether he had not told the claim agent that the plaintiff, in witness's opinion, was not drunk at the time in question, and over objection the question was in substance repeated, thereby in effect assuming that the witness had so stated in such report.

To better show the method of examination pursued and permitted with reference to two other of defendant's witnesses not employees, it is necessary to set forth from the record as follows:

"Mr. Martin: At this time I ask the defendant to produce the statement which it has got now in its possession—the statement given by this witness [Chris Rouman] October 20th.

"Mr. Van Doren: I decline to produce it.

"Mr. Martin: *Q.* Do you think, if you got that statement, it might help you to clear up things in your mind any?

"Objection as improper. Sustained. Exception.

"*Q.* Do you want that statement to look—do you want that statement which you made October 20th last and gave to Mr. Dockery, to enable you to recall the facts and circumstances better than what you probably can without?

"Objection as an improper question; the witness has not indicated any desire for that. Objection overruled. Exception.

"*Q.* Would you like to have the statement for that purpose? *A.* Well, I don't know.

"*Q*. Do you want it now to look it over? *A*. It makes no difference to me.

"*Q*. You think that everything is just as clear in your mind today as it was on the 20th of last October? *A*. I will say this: I may have forgotten some; it is quite a while ago since this happened.

"*Q*. Of course you know that the case is being tried now, and it is quite important that you tell us everything as accurately as you can. *A*. Well, I told the best I could remember.

"*Q*. And you don't seem to want to have your memory refreshed?

"Objection to that method of examination as improper; objection as not proper.

"*Q*. You don't seem to want to have your memory refreshed by reference to that typewritten statement which counsel has got, do you?

"Objection as improper. Sustained. Exception.

"Court: If the witness were an employee of the railway company you would be entitled to it."

None of these documents, statements, or reports thus sought to be produced and used, either as of employees of defendant or persons in no wise connected with it, were in any manner part of the *res gestæ*, nor could they be received as tending to show notice to the defendant of the happening of the event, for no such issue was in the case. They were not in the nature of declarations of any person who could thereby bind the defendant. *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 212, 99 N. W. 366; *Zentner v. Oshkosh G. L. Co.* 126 Wis. 196, 201, 105 N. W. 911; *Warner v. Maine Cent. R. Co.* 111 Me. 149, 88 Atl. 403.

Whether these reports or statements, or any of them, should be classed as privileged communications, as some authorities hold (*Ex parte Schoepf*, 74 Ohio St. 1, 77 N. E. 276; *Cully v. N. P. R. Co.* 35 Wash. 241, 77 Pac. 202), it is not necessary to decide. They were not admissible as evidence in plaintiff's behalf of any facts therein recited, nor were they documents which the party holding them should be

required to produce at the desire of the other. *Powell v. N. P. R. Co.* 46 Minn. 249, 48 N. W. 907; *Wabash R. Co. v. Farrell,* 79 Ill. App. 508; *Davenport Co. v. Pa. R. Co.* 166 Pa. St. 480, 31 Atl. 245; *Carroll v. E. T., V. & G. R. Co.* 82 Ga. 452, 106 S. E. 163; *Atchison, T. & S. F. R. Co. v. Burks,* 78 Kan. 515, 96 Pac. 950, 18 L. R. A. N. s. 231, note.

It is as legitimate and proper for a defendant to interview persons who may be acquainted with the facts and circumstances surrounding the subject matter of a litigation as it is for a plaintiff to pursue the same methods. Statements and information of the nature of the ones before us in this case, when obtained by either party to an occurrence which may result in a lawsuit, are not proper or legitimate evidence for the other party as to facts therein recited, and an opposing party has no right to compel the production of such statements nor to question the person who may have obtained them as to the contents of such statements. They are no more subject to compulsory production at the demand of the opposite party on the trial, when made by witnesses produced at the trial, than would be such statements made by persons not called as witnesses. Such persistent attempts as were made in this case to drag in such matters before the jury are more than likely to have a prejudicial effect and to result in a miscarriage of justice.

With the verdict that is before us upon the evidence in the record, such errors would have been sufficient to require a reversal of this judgment.

The plaintiff's own testimony in this case disclosed that at the time in question he was a man of about thirty-one years of age, weighing about 200 pounds, at one time engaged in railroading, but for some time a bartender; that he had arrived at Rhinelander at about 2 o'clock in the afternoon of that day for the purpose of seeking employment, and had spent the afternoon and evening, except for the time necessary for supper, in various saloons, and had drunk during that period ten small glasses of beer and about two glasses of

whisky; that he purchased his ticket from the ticket agent a few moments before the train was ready to depart and without any protest or objection from said ticket agent as to his condition or right to enter the train; that he stood upon the platform after the train had arrived and near the smoker with a brother-in-law of his and also with one O'Brien, the city policeman who was on duty at the depot that night; that just before the train was ready to leave the plaintiff was given a small flask of whisky by his brother-in-law to take with him to give to his father-in-law, with whom plaintiff then made his home in Appleton; and that he was sober at the time he was ready to enter the train.

He further testified that no objection was made by any one to his getting upon the train, and that he entered the smoking car and had seated himself in a seat in the rear end when the brakeman, whom the plaintiff had never seen or spoken to before, came up to him and said, "G—— d—— you, you can't ride this train;" that at the same time, the train having started, the conductor came forward from the front end of the smoking car without stopping on his way to take tickets from any of the passengers in the coach and joined with the brakeman, saying the same thing as the brakeman had just said; that the brakeman said also, "You are drunk, G—— d—— you, you can't ride this train;" that plaintiff showed him the ticket he had purchased and told the brakeman that he, the brakeman, was crazy; that the brakeman said, "I don't give a G—— d—— whether you have a ticket or not;" that when the conductor came he also said that he didn't give a G—— d—— whether the plaintiff had a ticket or not, he would have to get off the train; that the conductor had not said a word to plaintiff before this; that he was forced out of the door of the smoker and then they let go of him. Plaintiff then started to back down the steps and told the brakeman and conductor to stop the train, that he would get off; that the conductor stopped it just as it was pulling out of the depot; that as he stepped off backwards down the

steps of the smoker, holding a small handbag in one hand and on to the side handles of the car intending to step off as soon as the train stopped, and without his saying anything further, the brakeman, standing on the platform of the smoker facing him, kicked the plaintiff three times, first in the testicles and then in the stomach; that he then fell to the ground upon the handbag he was carrying; that he is uncertain as to whether the train had then actually stopped or not; that he used vile and obscene language after being so ejected. The policeman O'Brien then came up towards him and he walked back with the policeman to the station and at first demanded his money back for his ticket but subsequently determined to retain the ticket. He then started out of the station, and upon the platform outside the door he collapsed or fell over, complaining then of having been injured in his private parts, having spoken before that on his way to the window of having been injured in the abdomen.

He was taken to the city hall and there attended by physicians, and subsequently to the hospital at Rhinelander, and after two days' stay there was taken by defendant's physician, who was then attending him, in his automobile to the depot, and from there went to his home in Appleton. Here he was treated and examined by the defendant's physician and remained under such physician's treatment or observation for a month or more.

At the time of the trial in June, 1918, there was testimony indicating that he was suffering from neurasthenia, that he had lost some weight, had an impaired memory, had lost his sexual desire, was troubled with restlessness, loss of attentive power, incapable of performing work, and was described by some of the physicians as being a mental and physical wreck.

The testimony of the defendant's witnesses was to the effect that plaintiff approached the steps of the smoking car to enter; that the brakeman then told him that he, the plaintiff, was intoxicated and could not be permitted to enter the

train; that the plaintiff violently remonstrated and then walked forward from the rear end of the smoking car, down the platform, to about the middle of the baggage car, and there spoke to the conductor about his being refused admission to the train; that the conductor in effect informed him that it was the duty of the brakeman to enforce such regulation and that he should not enter; that he returned to the place where the brakeman was standing and again insisted on entering; that Policeman O'Brien then took hold of him and informed him that as long as he had been refused admission to the train he should not attempt to get on. The plaintiff nevertheless pulled away from O'Brien, and as the train was moving out from the depot jumped upon the steps of the smoker, and the brakeman, then seeing that he was upon the car, helped him on or permitted him to enter. He then went into the smoker and sat down at the rear end of that coach; that the brakeman then came to him and told him that he must leave the train; that the conductor who boarded the train at the baggage car, seeing the commotion at the rear end, came down through the smoking car directly to where the plaintiff was standing, and, placing his hand upon him, also informed him that he must leave the train and gave the signal to the engineer to stop the train; that the plaintiff then, without use of force by either the conductor or brakeman, passed out of the smoking car and down the steps, the conductor retaining hold upon him until the train had stopped; at a point about a block below the depot and when it came to a full stop the conductor let go of the plaintiff, who then stepped off the train in the usual way, and upon signal being given the train proceeded.

It was also testified on behalf of the defendant that as the train pulled away from the point where plaintiff had stepped off, the rear brakeman was standing on the platform of the last car, and that plaintiff, just as the end of that car was passing him, swung his arm with the handbag towards and as if to strike the rear brakeman, and that as a result of such

swing the plaintiff fell over onto the track at the rear of the train and upon his handbag; that the policeman, O'Brien, had walked up along the platform in the direction the train was moving after having seen the plaintiff board the train and reached plaintiff at about this same street crossing.

The plaintiff was corroborated as to his being sober by two witnesses who saw him a few moments before the train time, one a bartender at the saloon which he last visited, and a man who was there with him.    That he had entered the car while the train was standing still at Rhinelander, according to his theory and contrary to the testimony of the train employees, was in a measure corroborated by a witness called by the defendant, an Italian who was a passenger on the train and at the rear end of the smoker, who testified that he saw the plaintiff enter while the train was standing still at Rhinelander and stand up at the rear end of the smoker; that the plaintiff was then intoxicated, as could be seen by the witness; and that he was asked to leave the coach by the brakeman and conductor, and that no force was used or kick administered, although there might be some question, from his position in the car, as to whether he could have seen the kicking done, if it was done as testified to by plaintiff.

We fully appreciate the weight that should be given to the findings of a jury on questions of fact submitted to them (*Delvaux v. K., G. B. & W. R. Co.* 167 Wis. 586, 596, 167 N. W. 438) as a proper rule to be recognized by the trial court and by this court, and we merely repeat the rule now that it may be seen that it is not being overlooked.    Yet the testimony in this case, taking also into consideration the manner in which the trial was conducted to which attention has been given, presents a situation where we feel it our duty to say that the verdict of the jury in this case was the result of passion or prejudice and against the overwhelming testimony, and cannot stand as a foundation for a judgment in favor of the plaintiff.    *Parkes v. Lindenmann,* 161 Wis. 101, 109, 151 N. W. 787.

His own testimony amounts to this: That two employees of the railroad company, coming from different parts of the train, having had no prior communication between them on the subject, without the slightest ground for believing the passenger was intoxicated, without having made any prior objection to his entering the train (although the brakeman had been standing on the depot platform at the time of the passenger's entering, charged with the duty, under sub. 1, sec. 1565—1, Stats., of preventing persons intoxicated from entering such train), jointly attack such passenger, who was quietly seated and with his proper ticket; that such employees should jointly and with the use of precisely the same violent, profane, and abusive language forcibly remove such passenger ·when he expressed a perfect willingness to leave the train; and was proceeding so to do voluntarily, making no resistance and expressing no resentment of such treatment or language until after reaching the ground; the language he then used, under the conceded facts, being too obscene and vulgar to be set forth here even in abbreviated form.

There is no possible reasonable explanation of why the conductor should come down through the smoking car without first taking up tickets, which it is without dispute he did, and assist the brakeman in forcibly ejecting this passenger, unless he had been informed either by plaintiff or by a seeing of it that some controversy had already taken place between the plaintiff and the brakeman. If there had been such prior controversy so denied by plaintiff, then his testimony as to the alleged assault is so discredited that in the light of the other testimony and facts it ought to have no weight with an unprejudiced jury.

The plaintiff positively denied having gone forward to the baggage car and speaking to the conductor about being refused admission; that he did so go forward was testified to by the brakeman, conductor, Policeman O'Brien, and defendant's telegraph operator who was then acting as baggageman.

But plaintiff denied absolutely that there had been any controversy with the brakeman before entering the car or that Officer O'Brien had hold of him or had attempted to hold him as he was trying to get on the train. The contrary was testified to by Policeman O'Brien, the brakeman, the ticket agent who sold the plaintiff his ticket and who stepped out onto the platform, and by two other witnesses, Rouman and Kuroski, who were on the platform at the time and who were not employees of defendant.

The plaintiff's own version of this occurrence is so contrary to all reasonable probabilities, so contrary to common experience, and so overcome by the weight of evidence from unimpeached and disinterested witnesses that it was the duty of the trial court to have set aside this verdict and granted judgment for the defendant. The trial court having failed so to do, it now becomes the duty of this court to so direct.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for defendant.