HAMILTON, Administratrix, Respondent, vs. REINEMANN, Executor, and another, Appellants.

*January 16—February 13, 1940.*

For the appellants there was a brief by *Bassuener, Humke & Poole* of Sheboygan and *Barnard & Mullen* of Oshkosh, and oral argument by *John M. Poole*.

For the respondent there was a brief by *Eastman & Rose* of Marinette, and oral argument by *S. E. Eastman*.

WICKHEM, J. Defendants' contentions may thus be summarized: (1) The trial court erroneously admitted testimony of witnesses to declarations made after the accident by defendant's driver which tended to convict him of negligence. The objection is that these declarations were hearsay, were not part of the *res gestae,* and did not constitute impeaching testimony. (2) Except for these statements erroneously admitted, there was no evidence of negligent want of control by defendant's driver. (3) The award of damages for pain and suffering is excessive. In order that the significance of the first two contentions may be understood, it will be necessary briefly to state the facts involved in this accident.

Hamilton, plaintiff's deceased, was a truck driver employed by Wesley Freight Company of Menominee. Defendant Reinemann was a sole trader engaged in the flour and

feed business and having his principal place of business at Reedsville, Wisconsin. Elmer C. Fockett was a truck driver in his employ. On the day of the accident, December 30, 1937, Fockett, accompanied by a fellow employee, had driven an International tractor with stake-board platform trailer to Chicago, Illinois. He had started about 2 o'clock in the morning. He unloaded in Chicago and drove to Rockford, reaching there about 4:30 or 5 in the afternoon. He then drove to Saukville, stopping only to replenish his supply of gasoline. After leaving Saukville he proceeded north on Highway No. 57 at a speed of from twenty-five to thirty miles per hour. The roads were in good condition during most of the time. The Reinemann truck was carrying about eight and one-half tons of corn which had been purchased and loaded during the day. About a mile and a quarter south of the scene of the accident is located a tavern known as the Badger Club. When Fockett passed the tavern it was misting, his windshield wiper was going, and the mist was freezing upon the pavement. The road was slippery from that point to the scene of the accident. There is an upgrade as one approaches the Badger Club from the south, and thereafter a downgrade for a short distance, followed by a slight rise and another downgrade. Thereafter, the road is practically level. At about the time Fockett passed the Badger Club he noticed an automobile traveling in the same direction about two hundred to three hundred feet ahead of him. He claims that a short distance before the scene of the accident the car ahead of him slowed down and he eased his car to a slower speed. He claims to have had no difficulty in doing this by intermittently applying the brakes of his trailer. At about this time Hamilton, with a truck-trailer unit, was proceeding south on the same highway and passed the Reinemann truck. At the time of passing the Reinemann truck was moving slightly downgrade. According to Fockett's testimony, and that of his companion, his truck was wholly on the right side of the highway at the time Hamilton passed

him, and Hamilton was also on his right side of the highway and apparently traveling in a straight line. After the cabs of the two vehicles had passed, there was a crash, and from the physical facts it is evident that there was a violent collision between the rear portion of the Reinemann trailer and the front left side of the Hamilton tractor. The left front portion of the Hamilton tractor was badly smashed, and Hamilton was pinned in the wreckage and fatally injured. He was taken out of the truck with the assistance of Fockett, his companion, and some nearby residents, and carried to a farmhouse. He lived for only an hour and a quarter. After the accident the Reinemann truck was about seven or eight feet off the concrete on the east side of the highway, and the Hamilton truck was on the shoulder immediately adjacent to the west side of the highway. The rear end of the Hamilton trailer was opposite the rear end of the Reinemann trailer. A fog lamp, air cleaner, and portions of the hood were lying on the west edge of the pavement immediately to the east of the Hamilton truck. Corn was scattered all over the pavement, and while there was some dispute whether there was more of it on the west or the east side of the center line, photographs indicate that there was a considerable amount of it under the Hamilton truck. Literally, there were no surviving eyewitnesses to the accident since neither Fockett nor his companion saw the impact and Hamilton was dead. In this state of the evidence, it is contended by defendants that the physical facts are inconclusive and insufficient to prove negligent control, and that the verdict is based upon speculation and conjecture unless it be aided by certain testimony hereafter to be discussed which defendant claims was inadmissible, or, if admissible, could only be considered by the jury for the purpose of impeaching the credibility of Fockett as a witness.

Plaintiff, after first eliciting from Fockett as an adverse witness the testimony that we have outlined above, asked

him if he had not stated to others shortly after the accident that he had put on his trailer brakes when the car ahead of him started to slow down, and that his trailer had swayed and jackknifed across the road to the left-hand side. This was objected to as hearsay and as not binding upon the principal defendant. Counsel for plaintiff then stated that he was not offering this testimony as substantive evidence, but merely to impeach Fockett, who had testified to the contrary. The objection was overruled and several witnesses were called who testified that half an hour or more after the accident Fockett made such statements to them. The trial court admitted this evidence for impeachment purposes only.

It is claimed that the admission of this evidence was error, (1) because it constituted an admission and Fockett was not a party to the action and as agent was without authority to bind his principal by his admissions; (2) that the statements were made too long after the accident to be properly a part of the *res gestae* and admissible under the familiar exception to the hearsay rule; (3) that Fockett, being available as a witness, the statements, although against his pecuniary interest at the time when made, are not admissible under the exception to the hearsay rule for such statements; (4) that the statements testified to are hearsay and do not constitute proper impeaching testimony. The first three contentions are not only obviously sound but were held to be so by the trial court, and no question is raised by the respondent either as to their validity or application to this case. Obviously, Fockett was not a party. By the overwhelming authority in this state he had no authority as agent or employee to bind his employer by his admissions. *Kamp v. Coxe Bros. & Co.* 122 Wis. 206, 99 N. W. 366; *Garske v. Ridgeville,* 123 Wis. 503, 102 N. W. 22; *Lehan v. Chicago & N. W. R. Co.* 169 Wis. 327, 172 N. W. 787; *Zentner v. Oshkosh Gas Light Co.* 126 Wis. 196, 105 N. W. 911; *Bell v. Milwaukee E. R. & L. Co.* 169 Wis. 408, 172 N. W. 791; *Estate of*

*Leedom,* 218 Wis. 534, 259 N. W. 721, 261 N. W. 683; *Burton v. Brown,* 219 Wis. 520, 263 N. W. 573. There is no contention that the statements were made sufficiently soon after the accident to be within the exception for declarations under the influence of shock. Fockett was on the stand and the evidence could not come in as statements against interest under the hearsay exception. But the evidence was not offered as substantive evidence. It was offered as testimonial impeachment. A foundation was laid by first asking Fockett whether he had ever made such statements. The respects in which Fockett was sought to be impeached were material to the issues. The contention that hearsay statements afford no basis for the introduction of impeaching testimony is wholly unsound. In seeking the testimonial impeachment of a witness it is the fact of his having made conflicting statements upon matters material to the issues that is important, and these statements are not hearsay, because they are not offered for the truth of the facts which they purport to disclose but for the fact that they were made and that they are contrary to the testimony of the witness upon the stand. We see no possible objection to the evidence as impeachment evidence. This means, of course, that in considering whether the evidence sustains the finding of negligent control of his truck by defendant's driver, this impeaching testimony, whatever its probative force, must be excluded from consideration.

We come then to the question whether, excluding the statements just under consideration, the evidence sustains the findings of the jury. The facts that are claimed by plaintiff reasonably to support an inference of negligent want of control are, (1) that one of these units had to have crossed the center line of the road or there would have been no accident; (2) that the Hamilton truck was on its own side and traveling in a straight line when it passed the Reinemann tractor; (3) that the serious damage to the Hamilton tractor could not have been caused from the mere sideswipe which would

have resulted had the Hamilton tractor improperly turned or slued to its left, but must have resulted from a broad angle of collision; (4) that there was more corn on the west side of the highway indicating that the impact happened there; (5) that the parts torn loose from the Hamilton tractor were lying so close to the west edge of the concrete and to the tractor as to indicate that the impact occurred on the west side of the road; (6) that the location of the Hamilton truck after the accident on the west side of the highway with the rear end of its trailer opposite the rear end of the Reinemann trailer indicates that the accident happened on the west side of the center line; (7) that Fockett was experienced in driving trucks and knew how to drive a truck upon an icy road; (8) that he was familiar with the portion of the highway and the grades; (9) that he failed to shift from the highest transmission gear after observing the car ahead in coming upon the icy pavement; (10) that when the car ahead slowed down he put on his trailer brakes just before the collision occurred; and (11) that the Hamilton truck, although descending a much steeper grade, had not swayed or skidded up to the time it passed out of the sight of Fockett.

We are of the view that the evidence sustains the verdict. Two principal questions arise. We are first concerned with the location of the accident. Upon this issue we conclude that the jury was warranted in inferring that the accident happened upon the west side of the highway, and that it could only so happen if the trailer of the Reinemann truck jack-knifed or skidded across the path of the Hamilton tractor. The blow to the Hamilton truck was too violent to warrant the inference that Hamilton had turned his truck to the left into the Reinemann trailer, for that would have resulted in a glancing blow and not in the broad angle of collision plainly evidenced by photographs of the Hamilton truck after the accident and descriptions by witnesses of the damage to this truck. Further than this, the broken parts of the Hamilton tractor which witnesses testified had not been touched or moved after the accident up to the time the pictures were taken are on the west edge of the concrete or upon the west shoulder immediately to the east of the tractor and none of them are further to the rear of the vehicle than the tractor itself. It appears to us that these facts reasonably support the inferences that the impact occurred upon the west side of the concrete, and that the Hamilton truck made virtually no progress forward after the accident, but that it was shoved in a westerly direction off the concrete. It is not unreasonable also to infer that when Hamilton saw the skidding or jackknifing of the Reinemann trailer he turned to his right to avoid it. We do not deem the location of the corn on the highway as a circumstance of great importance. There is a conflict in the evidence upon this point, but a great deal depends upon the precise moment when the restraining portions of the Reinemann truck broke after the accident, and on this point we have no knowledge. We are next concerned with the question whether, assuming that the trailer of the Reinemann truck invaded the west half of the highway, the jury could find negligence on the part of the driver

with respect to control. We are of the opinion that the conclusion of the jury in this respect cannot be disturbed. The rule stated in *Seligman v. Hammond*, 205 Wis. 199, 236 N. W. 115, and *Booth v. Frankenstein*, 209 Wis. 362, 245 N. W. 191, to the effect that the mere operation of a car upon the wrong side of the highway makes at least a *prima facie* case of negligence and is enough, in the absence of an explanation which the jury is bound to accept, to warrant an inference of negligence on the part of its operator must be considered to govern this case. In the *Booth Case, supra,* it was stated that this is not a mere legal presumption of negligence but a genuine inference of fact. The question then arises whether the jury was bound to accept Fockett's testimony that he managed his brakes carefully, proceeded at a proper rate of speed, and did nothing which would account for a sudden skidding of his trailer. In view of the testimony which attributes to Fockett statements before the trial contradicting this evidence, the jury was not bound to believe him. Further than this, Fockett did not explain or attempt to explain his presence on the left side of the road. His testimony constituted a denial of this fact. We are therefore of the view that the jury was warranted in finding negligent want of control.

Defendants contend that an award by the jury of $500 for the conscious pain and suffering of Walter Hamilton is excessive. Hamilton was terribly and painfully injured by being jammed between the seat of his tractor and the broken portions of the superstructure of the cab. He was removed from the cab with great difficulty by the combined efforts of four men, and was laid upon the pavement. He was then carried two hundred feet to a house and temporarily placed on the kitchen floor. He was thereafter removed to a bedroom. He was conscious for an hour and twenty minutes before he died, and during all that time suffered excruciating pain. Defendants seek by reducing awards heretofore sus-

tained by this court for conscious pain and suffering to an hourly basis to demonstrate that this award is excessive. For example, it is claimed that the award in the case of *Warrichaiet v. Standard Oil Co.* 213 Wis. 619, 252 N. W. 187, amounted to about $142 a day for much greater pain and suffering than is involved here, and that in *Nygaard v. Wadhams Oil Co.* 231 Wis. 236, 284 N. W. 577, this court considered an allowance of about $200 an hour sufficient. We think that defendants are too mathematical in their approach to this subject, and that conscious pain and suffering cannot be reduced to an hourly basis. It is extremely doubtful if it can be reduced to any formula that will constitute a satisfactory rationale for other cases. The court does not consider that a $500 award under the circumstances of this case is excessive.

Defendants claim that an item of $80 for grave marker may not be recovered for by plaintiff. It is conceded that funeral expenses are a proper item, but asserted that a grave marker is not within the necessary funeral expenses. Plaintiff cites no cases on the subject but relies upon the provisions of sec. 318.01 (4), Stats. This section provides as follows:

"In case no provision is made in the will for a tombstone or monument or marker at the grave of the decedent, and none has been erected, the executor or administrator may expend a reasonable sum for a tombstone or monument or marker at the grave of his decedent. The expenditure shall be subject to the approval of the court and shall be classed as funeral expenses."

It seems to us quite clear that, apart from this statute, no one would suppose that grave markers or monuments constituted a part of the funeral expenses. Sec. 318.01 (4), Stats., for the purposes of accounting between the executor or administrator and the heirs permits him to be allowed credit for expenditures for a monument or grave marker, provided this bears a reasonable relation to the value of the

estate. This is on the theory that since the payment is out of funds accumulated by the deceased person, an executor or administrator should be permitted, as against heirs or legatees, to erect such a memorial as is reasonable under the circumstances. The statute arbitrarily classifies this as a funeral expense for purposes of accounting. It does not follow that this would commonly be understood to be a funeral expense or that it is a part of the damage in death cases. Such cases as have passed on the subject are in conflict. To the effect these do constitute a proper item of damages, see *South Texas Coaches v. Eastland* (Tex. Civ. App.), 101 S. W. (2d) 878. To the effect that they do not, see *Bynum v. Succession of Hodge* (La.), 131 So. 473. It is our conclusion that this is not a proper item of damage.

*By the Court.*—Judgment modified by striking therefrom the item of $80 awarded for a grave marker, and as so modified is affirmed. Respondent to have costs in this court.