HENNEPIN TRANSPORTATION COMPANY, INC., and others, Appellants, vs. SCHIRMERS and others, Respondents.*

*October 10—November 5, 1957.*

---

\* Motion for rehearing denied, with $25 costs, on January 7, 1958.

For the appellants there was a brief by *Robins, Davis & Lyons* of Minneapolis, Minnesota, and *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *Eugene O. Gehl* of Madison, and by *Harding A. Orren* of Minneapolis, Minnesota.

For the respondents there was a brief by *Schlotthauer & Jenswold* and *Stumreiter & Franken,* all of Madison, for Schirmers, and by *Quarles, Spence & Quarles* of Milwaukee, for J. R. Trytek, and oral argument by *John F. Stumreiter, Arthur Wickham,* and *John F. Jenswold.*

BROADFOOT, J.   At the close of the testimony the plaintiffs moved for a directed verdict in their favor, which was denied. The plaintiffs first contend that there was error in the trial in the following respects: (1) Failure to grant their motion for a directed verdict; and (2) failure to grant plaintiffs' motion to change the jury's answers in the verdict and for judgment notwithstanding the verdict. In order to discuss the first contention it will be necessary to state some of the testimony.

Celestine Schirmers testified as follows: At the time of the accident he was thirty years of age. He had been engaged in the trucking business with his brother since 1949. He had driven a bus for four or five years prior to 1949. He had operated a truck over the highway in question many times since 1953. He left St. Paul about 3 o'clock in the afternoon

on the day of the accident with a load of beer. He was followed by another truck, also loaded with beer and driven by one Stroeing. Both loads of beer were to be delivered to the defendant Trytek in northern Illinois. The drivers stopped at Hammond, Wisconsin, for coffee, then continued to Tomah where they had dinner about 8:15 p. m. They met a truck driver there who had come from the south and they inquired about the roads. They were informed that the roads were wet from Chicago to Madison or to the vicinity of Madison, but were good otherwise. Just prior to the accident Schirmers had proceeded up a grade at a speed of about 35 miles per hour. The crest of that grade was 1,000 or 1,500 feet north of the scene of the accident. After leaving the crest of the hill he came to a curve to his left, or to the east. There was then a straight stretch of road for some distance and he then approached a curve to his right, or to the west. (The two curves are described in the record as an "S" curve.) As he came around the south curve he saw the Hennepin truck from 100 to 300 feet away. It was then on its own side of the highway and proceeding at an ordinary rate of speed. When the Hennepin truck reached a point 50 to 75 feet away from Schirmers its lights pointed toward Schirmers and it appeared that the Hennepin truck was coming into the west lane. Schirmers stated he knew the other driver was in trouble so he turned his tractor to the right and applied his trailer brakes. He noticed ice upon the highway a short time before the collision occurred. He testified that his tractor was about half on and half off the paved portion of the highway when the collision occurred. He did not see the collision, which was between the tractor of the Hennepin truck and the trailer of the Schirmers unit. He testified that at all times in going down the curve, which was a banked curve sloping to the right, he stayed on his own side of the highway. On cross-examination he testified that he could not see his trailer behind him as he was paying attention

to turning off the highway. He could not say absolutely that his trailer did not swing somewhat to the left and that some part of it might not have crossed the center of the highway. Schirmers was not injured and the tractor he was driving was not damaged. After the accident he took flares and a flashlight and went back up the grade to stop the vehicle driven by Stroeing, who was following.

Schirmers also testified to the dimensions of his trailer. It was eight feet wide and 32 feet long. It was attached to the tractor by a kingpin set 36 inches back from the front of the trailer. There were dolly wheels set 10 feet back from the front of the trailer. These wheels can be let down when the tractor is to be released from the trailer. Toward the rear of the trailer there were two wheels on each side mounted on two separate axles. The distance from the back of the trailer to the center point between the axles was eight feet. In addition to doors at the rear of the trailer there was a door on the right side thereof, the rear part of which was 14 feet back from the front end. The trailer weighed 10,000 pounds and the beer 31,000 pounds. The collision caused the Schirmers trailer to break into two parts.

Two police officers were summoned to the scene of the accident and arrived soon thereafter. They described the positions of the vehicles as they found them following the accident. The Hennepin truck was close to the center line but within the east half of the highway. The tractor was turned in a northeasterly direction. The front of the tractor had been pushed back and the front end of the Hennepin trailer was damaged. The flash bulbs caught fire and beer and flash bulbs were scattered profusely over the highway. The Schirmers tractor and front end of the trailer were completely off the highway on the west side of the road and more than 100 feet south of the Hennepin truck. The rear section of the Schirmers trailer was completely off the paved portion of the highway and on the east side thereof near a broken

telephone pole. The rear wheels and the dolly wheels were on the rear section of the trailer. The trailer broke at an angle, commencing on the right side at the rear edge of the side door and slanting up to the front to a point opposite the dolly wheels. The officers found no skid or tire marks upon the highway except those made by the Schirmers tractor after it left the paved portion of the highway. That may have been due to the debris that was scattered heavily over the area. The Middleton fire department was called to extinguish the fire and the highway was sanded to permit a clearing of the highway to be performed in a more efficient manner. One of the officers testified that the sides and top of the Schirmers trailer were constructed of sheet metal, although the record does not disclose the thickness of the metal sheets. The trailer did not rest upon a metal frame and the floor was of wood of unspecified thickness.

Perhaps this statement of the testimony could have been abridged somewhat for if there is credible evidence to sustain the jury's verdict we cannot find that the verdict was incorrect. We could have selected only that part of the testimony that would best support the verdict. However, we have attempted to give a fairly complete abridgment of the testimony relating to the accident.

The plaintiffs argue that the verdict is contrary to the undisputed physical facts and is therefore not sustained by any credible evidence. Although they do not cite it, they are contending for the rule announced in the decision of this court in *Strnad v. Co-operative Insurance Mutual,* 256 Wis. 261, 273, 40 N. W. (2d) 552, wherein this court said:

"Considering all the testimony we concur in the conclusion of the trial court that there is no evidence to sustain the finding of the jury that Meleski invaded the west side of the highway except the testimony of Strnad. We further conclude that his testimony is in such direct conflict with the established physical facts that it is incredible."

The plaintiffs contend that this case is ruled by our decision in *Hamilton v. Reinemann,* 233 Wis. 572, 290 N. W. 194. The facts in that case and the present one are similar in that two trucks were proceeding in opposite directions at night upon a slippery highway. In that case the Hamilton truck was proceeding in a southerly direction down a grade while the other truck was proceeding northerly and going upgrade. The road in the *Hamilton Case,* however, was straight and no curve was involved. Hamilton was killed. In that case the collision did not occur until the cabs of the two vehicles had passed and the surviving driver did not actually see the collision. From that point on the cases are very dissimilar. The debris therein indicated that the collision occurred on the west lane of traffic and that the Reinemann truck was on its wrong side of the highway. There is no such evidence in this case.

The plaintiffs attempt to reconstruct the accident by drawing inferences, particularly from the location of the vehicles after the collision. In effect they are asking this court to apply rules of physics and dynamics, with which we are not too familiar, without the help of any expert testimony, and to find that the accident could only have happened because the Schirmers trailer jackknifed and swung into the east lane of travel. We are unable to do this. It is apparent that one of the vehicles invaded the lane of travel of the other. It is possible to infer that the collision happened because the Hennepin truck invaded the west lane of travel. The rule to be applied here is that stated in *Kleckner v. Great American Indemnity Co.* 257 Wis. 574, 577, 44 N. W. (2d) 560, as follows:

"The probative value of the testimony of witnesses is not destroyed by physical facts unless the physical facts are irrefutably established and permit of only one deduction.

" 'So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbi-

trary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other.' "

This rule has been affirmed in *Koniecko v. Huffman,* 265 Wis. 79, 60 N. W. (2d) 729, 61 N. W. (2d) 880, and in *Blom v. Kumbier,* 275 Wis. 227, 81 N. W. (2d) 528. The physical facts are not so clear that but one inference can be drawn therefrom. As was stated in the *Strnad Case, supra* (p. 273):

"Long experience has shown that in all except in a very few cases the position of the cars and their condition after a collision has very little, if any, probative value."

This is particularly true when an accident happens upon an icy highway, on a banked curve, and on a grade. There was a jury question and the trial court properly overruled plaintiffs' motion for a directed verdict.

There is credible evidence in the record to sustain the finding of the jury, and the trial court was correct in refusing to change the answers in the verdict and grant judgment for the plaintiffs notwithstanding the verdict.

The plaintiffs next contend that they are entitled to a new trial because of other errors alleged to have been committed during the trial. They requested that questions be submitted to the jury inquiring as to the negligence of Schirmers as to speed and as to management and control. The only question to be determined was which driver invaded the lane of travel of the other, or the jury could have found that each driver was negligent in that respect, and that each one was across the center line. It is to be noted that in the *Hamilton Case, supra,* relied upon by the plaintiffs, the jury was only asked to pass upon the negligence of each driver as to management and control. In effect that verdict inquired as to whether either driver was negligent in invading his wrong lane of travel. The verdict in the present case permitted the

jury to determine the essential issue in the case, and we find no error in the court's failure to submit the requested questions.

It is further claimed by the plaintiffs that the trial court erred in its instructions in that it did not give an instruction requested by them as to inferences to be drawn if the jury found that one of the vehicles was operated upon the wrong side of the highway but instead the trial court gave another instruction which they consider to be erroneous. We have read all of the instructions given. Prior to the criticized instruction the court had instructed as to the statutes that required that the operators of vehicles proceeding in opposite directions shall pass each other to the right and give to each other at least one half of the main-traveled portion of the roadway as nearly as possible, and also that upon all highways of sufficient width the operator of a vehicle shall operate the same upon the right half of the roadway. The jury was instructed that these were safety statutes and that a violation of either or both of them is negligence. Viewing the instructions as a whole, we cannot say they were prejudicial to the plaintiffs herein.

The plaintiffs also argue that they are entitled to a new trial because the court failed to grant their motion for a mistrial because of misconduct of counsel for the defendant Trytek during the *voir dire* examination. The trial court explains that incident in its memorandum decision on motions after verdict as follows:

"It appears that the most serious ground upon which a new trial is sought concerns the alleged misconduct at the *voir dire*. In this connection just as the *voir dire* was commencing, plaintiffs' counsel handed the court a question and requested it to ask same of the 24 panel members. This question read as follows: 'Are you officers, agents, policyholders, or stockholders of the following named insurance companies:' The court then read the names of seven com-

panies including the following four: The Home Insurance Company; Lloyd's of London; Home Fire & Marine Insurance Company; and Underwriters of Lloyd's. These last four, it appears, are clients of the very attorney who asked the court to make the inquiry, as the named plaintiffs had in fact assigned all their interest in the lawsuit to said four insurance companies.

"In any event, after such general question had been asked by the court and a negative response received from the panel, Mr. Arthur Wickham, counsel for J. R. Trytek, then asked the panel members the following question: 'Would any of you be adversely affected or prejudiced against Mr. Trytek because he had no insurance which protected him at the time of this accident? I had added also that there has been some little talk about compulsory insurance and I was interested as to whether that would in any way adversely affect you. If there is any question about its propriety, I would be glad to add further. I think it is entirely proper.' Mr. Wickham's actual question and statement was made in the absence of the reporter; however, the reporter was called and the above represents the best reconstruction of what Mr. Wickham actually said in the jury's presence. After Mr. Wickham's question was asked, Mr. Orren, counsel for the plaintiffs, approached the bench and indicated he wished to make a motion on the matter. The court indicated that as long as the question had already been asked that the panel members should be permitted to answer it and that the propriety of the question as well as any motion on it could be considered later in the absence of the jury. The panel members thereupon indicated that none of them would be prejudiced by Mr. Trytek's alleged lack of insurance and the *voir dire* was permitted to continue."

We do not approve of the way in which that part of the *voir dire* examination was conducted. If the attorneys for the plaintiffs were going to submit the question they did, that could have been taken up with the court and opposing counsel in the absence of the jury. The question then would not have surprised opposing counsel. In any event, after the questions were submitted we feel that the trial court should

have instructed the jury that because those questions were asked they should not infer that any particular party to the action was covered by insurance. There was error in the way the matter was handled but it was not prejudicial to the plaintiffs. No question as to negligence or liability of the defendant Trytek was submitted to the jury. They were asked to determine a question of fact wholly unrelated to the matter of insurance, and we find no prejudicial error because of the incident.

Finally the plaintiffs contend that the defendant Trytek is liable for Schirmers' actions as a principal under the terms of certain leases. Since Schirmers was found to be free from causal negligence this contention becomes moot. Trytek could only be liable if Schirmers were found to be causally negligent. Accordingly we have not gone into the matter of the various leases and attempted to determine any questions of agency or liability that were issues in the case.

*By the Court.*—Judgment affirmed.