KORUC, Appellant, v. SCHROEDER and another, Respondents.

*March 10—April 5, 1960.*

For the appellant there was a brief by *Schmitt & Wurster*, and oral argument by *Sverre O. Tinglum,* all of Merrill.

For the respondents there was a brief by *Smith, Puchner, Tinkham & Smith* of Wausau, and oral argument by *Richard P. Tinkham.*

MARTIN, C. J.   The accident occurred on September 1, 1957, at 7 p. m. while it was still daylight, on County Highway T in the Chequamegon National Forest in Taylor county.  The highway was a very narrow, hilly, and winding gravel road through a heavily forested area.  The place of

collision was the approximate crest of a steep hill at which point the traveled portion of the road was 19 feet wide with a high bank or "cut" on each side. There were no usable shoulders, the banks rising abruptly from the edge of the road on either side.

Each driver testified that as he approached the crest of the hill he was on his own side of the road and traveling at about 30 to 40 miles per hour. Schroeder was driving north, Koruc south.

Schroeder's testimony was that he saw the top of the Koruc car when they were approximately 150 feet apart, he being 65 to 70 feet from the point of impact and Koruc 80 to 85 feet north thereof, and that plaintiff's car appeared to be coming down the center of the road. Schroeder moved his car to the right about a foot and then, when the Koruc car was practically "on top" of him, he turned back to the left to straighten out his automobile. He did not blow the horn or brake his car.

The collision between the cars was at the left front fender of each, indicating that at the time of impact they overlapped eight or 10 inches. A gouge mark in the road made by the rim of the left front wheel of the Schroeder car was described by the county traffic officer who measured it as being entirely within the east, or Schroeder's, half of the road; its beginning point was nine feet from the east edge of the road and it extended in a northeasterly direction, in a slight curve, a distance of 10 feet and five inches to the left front wheel of the Schroeder car as it stood after the accident.

Koruc's testimony was that as he came up the hill from the north the top of the Schroeder car first came into his view when it was 50 to 75 feet away, that he immediately applied his brakes and turned to the right just as the collision occurred. Members of his family, who were pas-

sengers in the car, supported his testimony, maintaining that the Schroeder car was on the wrong side of the road. Koruc did not blow his horn and his foot was on the accelerator when the car came to rest after the accident.

Only one item of negligence on the part of each driver was submitted to the jury, that of position on the highway. The only question on appeal is whether the trial court erred in refusing to submit a question on Schroeder's management and control.

Plaintiff's argument is that from the evidence that the gouge mark began nine feet from the eastern edge of the road, or six inches east of the center, the Schroeder car being six feet wide, it follows that at the time of impact Schroeder had three feet of clear traveling room to his right; that the jury should have been required to determine whether his failure to turn farther to the right was negligence in management and control. It is also argued that from Schroeder's testimony that he turned to the right and then to the left before the collision, the jury would be justified in concluding that he was actually farther from the Koruc car than 145 to 155 feet when he first saw it and that if Schroeder had applied his brakes or sounded his horn the accident could have been avoided.

The only ultimate fact necessary to a determination of the issues in this case was position on the highway. Each driver saw the other at the same time, each was traveling at 30 to 40 miles per hour and both were confronted with the same circumstances: A steep hill, a narrow road with no shoulders to drive on, high banks rising abruptly at each side of the road. The question of position on the highway is a broader question than failure to yield one half of the roadway. In finding both drivers negligent as to position on the road the jury necessarily reached the conclusion that each could have gotten farther to his right,

but it does not follow that the jury found both were on the wrong side of the road. Obviously, the position of each automobile on the highway was the result of negligent management and control on the part of the driver. To submit a separate question on either driver's management and control would not be necessary. Submission of that question only as to Schroeder would require facts indicating that his acts, omissions, duties, or opportunities in that respect were different from Koruc's, a situation which is not presented by the evidence in this case. The trial court has discretion in such matters, and we find no prejudice to the plaintiff.

In a number of cases the submission to the jury of questions on various items of negligence such as failure to apply brakes, failure to sound horn, failure to reduce speed, etc., has been permitted. In such cases, however, there was evidence that one of the drivers may have committed or omitted some of those acts and the other driver some other of them and each had time to do something to avoid the accident. In this case, as pointed out above, the same circumstances confronted both of the drivers and the only ultimate fact necessary was position on the highway. Questions regarding management and control could only lead to confusion, and the trial court properly limited the special verdict to the question as to position on the highway.

In *Atkinson v. Huber* (1955), 268 Wis. 615, 619, 68 N. W. (2d) 447, a head-on-collision case, questions were submitted to the jury as to the plaintiff's negligence with respect to (1) position of her automobile on the highway, (2) speed, (3) lookout, and (4) management and control. Defendant challenged an instruction on the presumption of due care as to Mrs. Atkinson arising from the fact that she suffered amnesia as the result of injuries she sustained in the accident. This court held that questions as

to her speed and lookout should not have been submitted because of lack of evidence, but that there was evidence contrary to the presumption "with respect to the position which she allowed or caused her car to occupy upon the highway." The court held (p. 618):

"We have said that there was but one question to be submitted in the inquiry as to the conduct of Mrs. Atkinson. If she was negligent with respect to management and control it could have been only in causing or permitting her automobile to occupy an improper position on the highway, the subject of the first inquiry."

In *Heagney v. Sellen* (1956), 272 Wis. 107, 74 N. W. (2d) 745, 75 N. W. (2d) 801, another head-on collision, the jury found the plaintiff negligent as to management and control and on appeal it was argued that the special verdict should have included a question as to her invasion of the left side of the highway. This court approved the form of the verdict, noting that the trial court in its instructions on the question of her management and control covered the issue of invasion of the wrong side of the road and read to the jury the applicable portions of sec. 85.15 (1), Stats.

In *Hennepin Transportation Co. v. Schirmers* (1957), 2 Wis. (2d) 165, 85 N. W. (2d) 757, which arose out of a collision between two tractor-trailer units, one northbound and the other southbound, error was assigned in the refusal of the trial court to submit questions on the defendant's negligence as to speed and management and control. This court held (p. 172):

"The only question to be determined was which driver invaded the lane of travel of the other, or the jury could have found that each driver was negligent in that respect, and that each one was across the center line. It is to be noted that in the *Hamilton Case, supra* [233 Wis. 572, 290 N. W. 194], relied upon by the plaintiffs, the jury was

only asked to pass upon the negligence of each driver as to management and control. In effect that verdict inquired as to whether either driver was negligent in invading his wrong lane of travel. The verdict in the present case permitted the jury to determine the essential issue in the case, and we find no error in the court's failure to submit the requested questions."

In *Vanderbloemen v. Suchosky* (1959), 7 Wis. (2d) 367, 97 N. W. (2d) 183, a head-on-collision case, each driver maintained he was on his own side of the highway and the other was on the wrong side and each swung left in an effort to avoid the collision. The plaintiff neither applied his brakes nor sounded his horn. Questions both as to driving to the left of the center of the roadway and as to management and control were submitted as to each driver. The jury found plaintiff negligent in both respects, the defendant negligent only as to driving to the left of the center line. This court said (p. 371) :

"The plaintiffs further contend that . . . the action of the plaintiff driver in turning to the left across the center line is negligence only as to management and control and that findings that he was negligent both as to management and control and driving across the center line are duplicitous. We cannot agree with that contention. The jury was entitled to find that he was causally negligent with respect to management and control because of his failure to apply his brakes or to do anything to avoid the accident except turn to the left. Vanderbloemen was clearly over the center line at the time of the collision, and the record justifies that finding by the jury. The questions related to different acts of negligence and they were not duplicitous."

That case merely holds that the form of the verdict there submitted was not duplicitous under the facts there presented. Both questions were submitted as to both drivers and the "different acts of negligence" which the court referred to were, on the one hand, crossing the center line,

and, on the other, application of brakes or other acts not covered under the question as to driving on the left side of the road. The distinguishing difference between the *Vanderbloemen Case* and the instant one is that here the question submitted was as to "position on the highway," which encompasses all negligent acts and omissions attributable to each driver in his management and control which caused his automobile to occupy the position it did at the time of the accident.

The fifth question in the special verdict inquired "what percentage of all the negligence which produced the collision" was attributable to the defendant and to the plaintiff. In instructing the jury on that question the court stated:

"In answering this fifth question, . . . you will take the total of all the negligence which produced the collision to be 100 per cent, . . ."

Thus the court instructed that the jury take "all the negligence" into consideration, permitting it to consider the picture as a whole and to apportion the negligence accordingly. No separate instruction as to management and control was requested by the plaintiff and none was given.

*By the Court.*—Judgment affirmed.